### STATE OF CONNECTICUT *v.* GARY HALL
### (AC 20174)

Foti, Dranginis and Stoughton, Js.

Argued March 22—officially released November 13, 2001

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Gary Hall, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-49 (a) (2). On appeal, the defendant claims that (1) the evidence was insufficient to establish a conviction of attempt to commit robbery in the first degree, (2) the court improperly instructed the jury that theft of services may be the factual predicate for attempt to commit robbery in the first degree, (3) the court violated the defendant's rights to confrontation and cross-examination by excluding evidence that the state's key witness falsely testified regarding a witness to the crime, (4) the court improperly prohibited defense counsel from calling its investigator as a witness to impeach a state witness and (5) the court improperly instructed the jury on proof beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2:33 a.m. on August 10, 1998, the victim, a taxicab driver, went to pick up a fare. His dispatch computer indicated that two individuals were to be picked up at Eastern Circle in New Haven with an intended destination on Ward Street in New Haven. When the victim arrived at Eastern Circle, three individuals were there, including the defendant. The victim, in accordance with his usual practice for fares picked up after midnight, took $10 from the defendant as "cash in advance." At the direction of his passengers, he then drove them to two locations at which one of the passengers apparently would attempt to purchase drugs by

exiting the vehicle, going behind a building and returning a few minutes later. At the second stop, the passenger was successful in his effort to purchase drugs. The victim also stopped at a gasoline station at the passengers' request so that they could purchase cigars. He then returned to Eastern Circle as requested.

As he approached Eastern Circle, the victim checked the taxicab's meter, which indicated a fare of "around twenty-three, twenty-four dollars." He then slowed the vehicle and asked for the rest of his fare. The defendant, who was sitting on the passenger side of the backseat, reached behind him for a gun. The defendant took the gun and pointed it at the victim through the two or three inch gap between the roof of the taxicab and the protective glass shield that separates the front seat and backseat of the taxicab. The defendant said to the victim, "I've got your money."[1]

The victim, believing that he was being robbed, pushed a button raising the shield completely, drove at a high rate of speed in search of a police officer and alerted the taxicab company's dispatcher by pressing an alarm button. Meanwhile, the passengers were yelling and banging on the glass shield. One passenger broke the passenger side window. The victim decided to drive to the police station; however, as the taxicab slowed to enter a highway, the passengers exited the taxicab and ran away. A police investigation, which included questioning of the person who lived at the address to where the cab had been called, led to the defendant's arrest. The victim identified the defendant in a photographic array one week after the incident and in court at trial.

---

[1] The victim testified that he was not sure exactly what the defendant said. He testified that it was "let me give you money or give me money, something like that." Two police officers who spoke with the victim shortly after the incident testified that the defendant said, "I have your money," and, "I've got your money," respectively.

The defendant was charged with one count of attempt to commit robbery in the first degree in violation of §§ 53a-49 (a) (2) and 53a-134 (a) (4), and one count of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. The jury found the defendant guilty on the first count and acquitted him on the second count. The court sentenced him to fifteen years imprisonment, execution suspended after serving seven years, with five years probation.[2] This appeal followed. Additional facts will be set forth as necessary to resolve the issues on appeal.

I

The defendant first claims that the evidence adduced at trial was insufficient to establish a conviction for attempt to commit robbery in the first degree, and therefore violates the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. Specifically, he claims that (1) the evidence did not establish an intent to steal and (2) proof of a larcenous fare evasion, even though accompanied by threat of force or intimidation, does not establish attempt to commit robbery.[3] We disagree.

"We employ a well established standard of review when a defendant challenges a trial court's finding of guilt on the ground of insufficient evidence. In reviewing [a] sufficiency [of the evidence] claim, we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the [finding of guilt]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded

[2] The defendant also was charged with criminal contempt in violation of General Statutes § 51-33a to which he pleaded guilty and was sentenced to thirty days imprisonment to run consecutively to the sentence for the conviction of attempt to commit robbery in the first degree.

[3] See part II.

that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . Furthermore, any challenge to the sufficiency of the evidence supporting a conviction will be construed in favor of sustaining the verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Calonico*, 256 Conn. 135, 152–53, 770 A.2d 454 (2001).

"A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133. Robbery in the first degree requires that, in the commission of a robbery, the defendant display or threaten the use of what he represents to be a firearm. General Statutes § 53a-134.

"For a conviction of attempted robbery, the state must prove that the defendant possessed the requisite mental state and took a substantial step toward committing a robbery.[4] . . . Specifically, the state must show that the defendant took a substantial step in committing larceny, by attempting to use or threaten force on the victim for the purpose of either (1) 'preventing or overcoming resistance to the taking' of property, or (2)

---

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

compelling the victim to 'deliver up' the property. General Statutes § 53a-133 (defining the elements of robbery)." (Citation omitted.) *State* v. *Dennison*, 24 Conn. App. 27, 35, 585 A.2d 1240, rev'd on other grounds, 220 Conn. 652, 600 A.2d 1343 (1991).

The defendant argues that he did not attempt to take the victim's property because he did not demand any money from the victim; rather, he refused to pay the victim money that he owed him. He argues that the weight of the testimony supports the finding that the defendant's intent was to evade paying the fare and, therefore, the state failed to prove that he intended to steal money from the victim.

"It is well established that [t]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the [finder of fact] to decide." (Internal quotation marks omitted.) *State* v. *Dumas*, 54 Conn. App. 780, 784, 739 A.2d 1251, cert. denied, 252 Conn. 903, 743 A.2d 616 (1999). "[T]he absence of a specific demand for property, in and of itself, does not prevent a finding by the trier of fact [on] the element of intent." (Internal quotation marks omitted.) Id., 785, citing *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant had the requisite intent to commit robbery in the first degree. On the basis of the evidence presented, the jury reasonably

could have found that the defendant said to the victim, "I've got your money," or, "Let me give you money," while pointing a weapon at the victim over the protective shield in the taxicab. There was no evidence presented that the defendant was attempting to give the victim money. In fact, it defies reason to suggest that the defendant would be attempting to pay the driver while he was pointing a gun at him. Rather, it is reasonable to infer that the defendant was being sarcastic when he said, "I've got your money." The defendant knew that the victim had at least $10 in his possession. The defendant's protests following his statement, including his banging and yelling, support the inference that the defendant had demanded money. The evidence further supports the conclusion that the victim believed he was being robbed. From those facts, and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established beyond a reasonable doubt that the defendant intended to demand money from the driver. The evidence, therefore, was sufficient to sustain the conviction for attempt to commit robbery in the first degree.

## II

The defendant next claims that the court improperly charged the jury on the offense of attempt to commit robbery in the first degree. Specifically, the defendant argues that the charge was improper because it instructed the jury that it could find the defendant guilty even if its basis for so finding was the defendant's refusal to pay the taxicab fare. The defendant claims that a conviction for attempt to commit robbery in the first degree cannot stand on the basis of a refusal to pay a debt, even if the refusal is by threat or intimidation. Therefore, he claims, the instructions allowed the jury to find the defendant guilty on an inadequate theory of liability. We disagree.

The defendant's claim was not properly preserved for appeal. The defendant therefore seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id.

The record is adequate for review, and the defendant's claim is of constitutional magnitude. See *State* v. *Chapman*, 229 Conn. 529, 540, 643 A.2d 1213 (1994) (due process implicated where jurors given option of relying on legally inadequate theory of liability). The defendant has failed to demonstrate, however, that the alleged constitutional violation clearly exists.

"The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are cor-

rect in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 182, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

The instruction in this case permitted the jury to consider facts that would constitute a larceny, specifically, theft of services, in determining whether the defendant had attempted to commit a robbery. The defendant argues that the threatened use of force to commit a larceny by theft of services, however, does not establish the crime of robbery in the first degree because fare evasion is not a property for the purposes of the robbery statutes. He contends that the General Statutes specifically provide for "theft of services" separate from the general definition of larceny and that "theft of services" is not a larceny, the commission of which may be the basis of a robbery. We disagree.

"Our analysis is governed by well established principles of statutory construction. Statutory construction is a question of law and, therefore, our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .

"When the statute in question is one of a criminal nature, we are guided by additional tenets of statutory construction. First, it is axiomatic that we must refrain from imposing criminal liability where the legislature has not expressly so intended. . . . Second, [c]riminal statutes are not to be read more broadly than their

language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . Finally, unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 788–89, 772 A.2d 559 (2001).

"The rule of strict construction, however, does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. . . . Common sense should be applied to the language of a penal statute, particularly if otherwise absurdity or frustration of the evident design of the legislature results." (Internal quotation marks omitted.) *State* v. *Albert*, 50 Conn. App. 715, 726, 719 A.2d 1183 (1998), aff'd, 252 Conn. 795, 750 A.2d 1037 (2000).

The resolution of the defendant's claim turns on whether a larceny by theft of services constitutes a larceny as defined by the robbery statutes. We conclude that the statutory language is clear and unambiguous.

The statute defining larceny provides in relevant part that a person commits a larceny when, "with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119. The legislature further defined the term, providing that "[l]arceny includes, but is not limited to . . . [t]heft of services." General Statutes § 53a-119 (7).[5] Clearly, the legislature intended to

[5] General Statutes § 53a-119 (7) provides in relevant part: "Theft of services. A person is guilty of theft of services when . . . (B) (i) with intent to obtain . . . taxi or any other public transportation service without payment of the lawful charge therefor or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains such service or avoids payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay . . . ."

include theft of services among those acts that constitute larceny. It is also clear that the legislature intended that the use of force in the commission of a larceny constitute a robbery: "A person commits robbery when, *in the course of committing a larceny*, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking . . . or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids *in the commission of the larceny*." (Emphasis added.) General Statutes § 53a-133. "The use or threatened use of immediate physical force is the element which distinguishes larceny from robbery." (Internal quotation marks omitted.) *State* v. *Crosswell*, 223 Conn. 243, 250, 612 A.2d 1174 (1994). The state argues, and we agree, that it would defeat the intention of the legislature to exclude theft of services from the robbery statute. The fundamental purpose of the robbery statute is to make punishable a larceny committed by threat or use of force. Because "theft of services" must be construed as a larceny under § 53a-119, the term "services" as used in the larceny statute must constitute "property" for the purpose of the robbery statute. We therefore conclude that the court's instruction was correct in law and sufficient for the guidance of the jury.

## III

The defendant next claims that the court violated his rights under the sixth and fourteenth amendments to the United States constitution because it (1) limited cross-examination of the state's key witness, the victim, as collateral and (2) did not permit the defendant to introduce extrinsic evidence to impeach the victim on a matter that the court improperly deemed collateral.[6]

---

[6] Although the defendant claims that he was not permitted to present *extrinsic* evidence to impeach the victim's testimony, his argument is limited to a discussion of whether the court properly limited cross-examination of the victim. His brief does not address whether he should have been allowed

The defendant argues that the court's ruling was improper because the evidence would have gone to the victim's credibility by revealing whether he fabricated a witness to corroborate his version of the incident and, therefore, the evidence could not be considered collateral. The defendant further claims that he was prejudiced because he was not permitted to question the victim on that matter, and the state, outside the presence of the jury, only admitted that it did not know about the witness, thus improperly leading the jury to believe that the state's attorney did know about the witness. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. At trial and at a prior evidentiary hearing, the victim testified that an Amtrak truck driver had observed the defendant and his companions exit and run from the victim's taxicab. The truck driver drove into a nearby gas station and, before police arrived, spoke with the victim and told him in what direction he saw the defendant run. When the police arrived, however, the truck driver was gone. Although the victim testified on cross-examination that he told the police about that witness, there was no mention of the truck driver in the police report. The victim also testified that he informed the state's attorney about that witness. Consequently, the defendant argued to the court that the victim perjured himself, having concocted the story of the witness to bolster his story about where the defendant ran. The defendant sought to call the state's attorney as a witness, or, alternatively,

---

to call the state's attorney as a witness. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *In re Matthew S.*, 60 Conn. App. 127, 133, 758 A.2d 459 (2000). We therefore decline to review the defendant's claim that the court improperly excluded extrinsic evidence to impeach the victim.

to have the state stipulate that it did not know about the witness until the evidentiary hearing and that the victim is a liar. The state refused to so stipulate. After a brief recess, the court determined that the issue was collateral and therefore could not be used for purposes of impeachment.

When cross-examination of the victim resumed, defense counsel asked questions about where and when the victim told the state's attorney about the truck driver. The court sustained the state's objections, ruling that the matter was a collateral issue. Thereafter, the state called as a witness a police officer who had responded to the incident and who testified that the victim did not tell him about the truck driver. The defendant again sought to elicit testimony as to when and where the victim told the state's attorney about the witness, this time arguing that the state had opened the door. The court deemed the matter collateral and disallowed the questioning.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . If the constitutional standard has been met, then we must nonetheless examine

whether the court abused its discretion in restricting the defendant's cross-examination of the victim." (Citation omitted; internal quotation marks omitted.) *State* v. *Price*, 61 Conn. App. 417, 428, 767 A.2d 107, cert. denied, 255 Conn. 947, 769 A.2d 64 (2001).

"In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the trial court, [t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

Although the defendant argues that his line of questioning would have elicited information that would aid the jury in assessing the credibility of the victim, we conclude that in light of the overall cross-examination, the defendant's counsel had ample opportunity to cross-examine the victim. Defense counsel's thorough cross-examination elicited testimony that pointed out that the victim could not recall at trial which police officer he told about the witness when he was sure at the evidentiary hearing that it was Officer Ralph Consiglio. The victim further testified that he changed his testimony to say that it might not have been Officer Consiglio after learning that the police report contained no

mention of the witness. Taking into account the complete cross-examination of the victim, the jury was given sufficient facts from which it could determine the reliability of his testimony. The cross-examination of the victim, therefore, met the constitutional standard.

Having determined that the constitutional standard was satisfied, the defendant does not satisfy his further burden of showing that the restriction on cross-examination was an abuse of discretion. See *State* v. *McKnight*, 47 Conn. App. 664, 668, 706 A.2d 1003 (1998). "To establish an abuse of discretion, the defendant must show that the court's restrictions clearly prejudiced him." *State* v. *Price*, supra, 61 Conn. App. 429; see also *State* v. *Oliver*, 41 Conn. App. 139, 145, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996).

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Evidence is considered relevant when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . . Furthermore, relevant evidence has a logical tendency to aid the trier in the determination of an issue. . . . A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case." (Citations omitted; internal quotation marks omitted.)

*State* v. *Wright*, 62 Conn. App. 743, 757–58, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001).

Here, defense counsel wanted to pursue a line of questioning regarding where and when, if ever, the victim told the state's attorney about the truck driver. Because defense counsel already established that the victim had told the state's attorney some time before the evidentiary hearing, the court was well within its discretion to restrict defense counsel's inquiry on that subject.

Under the circumstances of this case, we conclude that the court did not infringe on the defendant's right to cross-examine the victim. The court did not violate the defendant's right to confrontation, and the court did not abuse its discretion in precluding cross-examination regarding when the victim told the state's attorney about the witness.

IV

The defendant next claims that the court improperly prohibited defense counsel from calling the defense investigator to impeach the state's witness, Saghir "Sammy" Ahmed, thereby violating the defendant's sixth and fourteenth amendment rights to present a defense and to confrontation. We disagree.

The following additional facts are necessary for our disposition of the defendant's claim. The state called as a witness Ahmed, the Metro Cab dispatcher on duty on the night of the incident. The victim had called Ahmed while the defendant was still in the taxicab, and Ahmed called the police. Three weeks prior to trial, Ahmed had sat with a defense investigator and reviewed the tape of the radio call. On cross-examination of Ahmed, the defense counsel asked if he recalled saying to the investigator that this was a "fare evasion" after hearing the tape. Ahmed replied that he did not recall.

Defense counsel subsequently sought to impeach Ahmed by calling the investigator, who would testify about Ahmed's prior inconsistent statement, and the state objected. The court sustained the state's objection, ruling that it was a collateral matter for which extrinsic evidence of a prior inconsistent statement is not admissible.

"As a general rule, extrinsic evidence of a prior inconsistent statement may not be admitted to impeach the testimony of a witness on a collateral matter. . . . Thus, on cross-examination, a witness' answer regarding a collateral matter is conclusive and cannot be contradicted later by extrinsic evidence. . . . Extrinsic evidence of a prior inconsistent statement may be admitted, however, to impeach a witness' testimony on a noncollateral matter. . . . A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . The determination of whether a matter is relevant to a material issue or is collateral generally rests within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Francis*, 246 Conn. 339, 344 n.9, 717 A.2d 696 (1998), citing *State* v. *Colton*, 227 Conn. 231, 247, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "To be admissible, proof that the witness made a prior statement inconsistent with his trial testimony must show a substantial inconsistency and must relate to a material issue rather than a collateral matter. *State* v. *Avis*, 209 Conn. 290, 302, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989)." *State* v. *Black*, 23 Conn. App. 241, 246, 579 A.2d 1107, cert. denied, 216 Conn. 827, 582 A.2d 204 (1990). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the trial court's rulings on evidentiary

matters." *State* v. *Moran,* 53 Conn. App. 406, 413, 731 A.2d 758, cert. denied, 249 Conn. 925, 733 A.2d 849 (1999).

We conclude that the exclusion of extrinsic evidence, the defense investigator's proffered testimony that Ahmed had stated that "this was a fare evasion," was not an abuse of discretion. Ahmed's characterization of the attempted robbery is collateral. Clearly, Ahmed heard a distress call as a crime was being committed and called the police. The court was able to assess the testimony concerning the nature of the communications made on the night of the offense and the circumstances surrounding those communications, and to compare that evidence with the proffered evidence that Ahmed's statement was inconsistent, material and subject to impeachment by extrinsic evidence. The court had evidence before it that Ahmed had not told police it was a "fare evasion" case, that he was unsure if he had referred to the events as such and that his characterization of those events three weeks prior to trial was not material to the case. The attempt to impeach Ahmed's credibility by extrinsic evidence would have been improper.

Moreover, the court was in the best position to determine, in light of all of the evidence proffered, whether there was a substantial inconsistency in his testimony. The court's evidentiary rulings are given great deference precisely because the court is in the best position to hear and assess the entire testimony in the context of the entire trial. The court did not abuse its discretion in disallowing the proffered testimony. It cannot be said that Ahmed's statement was inconsistent in a substantial way or that his opinion as to what transpired in the taxicab was material.

V

The defendant finally claims that the jury instruction defining proof beyond a reasonable doubt diluted the

state's burden of proof and, therefore, violated his due process rights as guaranteed by the fourteenth amendment to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut. Specifically, he takes issue with four key phrases that we will address in turn.

We must first address the standard of review. "A defendant in a criminal case is entitled to a clear and unequivocal charge by the court that his guilt must be proved beyond a reasonable doubt. . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . .

"In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." *State* v. *Rodriguez*, 63

Conn. App. 529, 534–35, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

The defendant first takes issue with the jury's charge that reasonable doubt is a "real doubt," an "honest doubt." He argues that those terms are synonymous with "genuine" rather than "reasonable" and, because the court used those terms twice, the instruction required a greater amount of doubt, thereby diluting the state's burden of proof. We disagree.

Connecticut courts repeatedly have rejected constitutional challenges to instructional language that reasonable doubt is "a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence." See, e.g., State v. Lemoine, 256 Conn. 193, 202, 770 A.2d 491 (2001); State v. Montgomery, 254 Conn. 694, 730, 759 A.2d 995 (2000); State v. Taylor, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). In light of the instructions as a whole, we cannot conclude that the instruction on "real, honest doubt" demanded a higher standard than reasonable doubt such that the jury was misled.[7]

The defendant next takes issue with the language, "it is [a doubt] for which you can, in your own mind, conscientiously give a reason." He contends that this language required the jury to have a moral reason to find a doubt, as the term "conscientious" can be defined

---

[7] The court instructed in relevant part: "What does beyond a reasonable doubt mean? It has no technical or unusual meaning. You may arrive at the real meaning of this term beyond a reasonable doubt by emphasizing the word reasonable. A reasonable doubt means doubt based upon reason and common sense. It is a doubt which is something more than a guess or a surmise. It is not a conjecture or a fanciful doubt or a doubt raised by one who questions simply for the sake of argument. It is not hesitation springing from feelings of sympathy or pity for the accused or members of his family or sympathy or pity for any other persons who might, in any way, be affected by your verdict. A reasonable doubt is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or in the lack of evidence. . . ."

as "*governing by or conforming to the dictates of con-science*"; which, in turn, means "moral goodness or character" or a "feeling of obligation to do right or be good." In support of his position, he cites the United States Supreme Court's decision in *Cage* v. *Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990). In that case, the court held improper an instruction that equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt" and stated that what was required was a "*moral certainty that the defendant was guilty.*" (Internal quotation marks omitted.) Id., 41.

The defendant's reliance on *Cage* is misplaced. "In *Cage* v. *Louisiana*, [supra, 498 U.S. 41], the Supreme Court of the United States reversed the petitioner's murder conviction, concluding that the trial court's jury instructions on the definition of reasonable doubt impermissibly diluted the state's burden of proof. In ruling that the trial court's jury instructions were consti-tutionally defective, the Supreme Court focused on the trial court's descriptions of reasonable doubt as such doubt as would give rise to a grave uncertainty, an actual substantial doubt and a moral certainty. Id., [40]. It is plain to us, the Supreme Court declared, that the words substantial and grave, as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the [reasonable-doubt] standard. When those statements are then considered with the reference to moral certainty, rather than evi-dentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. Id., [41]. . . . Thus, the Supreme Court . . . focused not merely on the trial court's characterization of a reasonable doubt as a substantial doubt but on the cumulative effect of three offending terms that hopelessly polluted the trial court's reasonable doubt instructions." (Internal quota-

tion marks omitted.) *State* v. *Dizon*, 28 Conn. App. 444, 448, 611 A.2d 432 (1992) (concluding that jury instruction referring to reasonable doubt as a "substantial doubt" was a "sole misstatement" in light of the instructions as a whole).

In *State* v. *Gomez*, 225 Conn. 347, 622 A.2d 1014 (1993), our Supreme Court concluded that a jury was instructed properly that reasonable doubt is "a doubt for which a reasonable man or woman can give a valid reason," and that "[a] reasonable doubt is a doubt which would cause you as reasonable and prudent men and women to hesitate to act in the more weighty and important matters relating to your own affairs." (Internal quotation marks omitted.) Id., 353 n.8. The court rejected the defendant's claim that *Cage* required reversal, reasoning that the instruction at issue contained none of the objectionable language in *Cage*. Id., 354 n.10.

In this case, as in *Gomez*, the jury charge as a whole clearly defined the proof beyond a reasonable doubt standard. See also *State* v. *Montgomery*, supra, 254 Conn. 729–31. We cannot say that the effect of using the term conscientiously "hopelessly polluted" the jury instructions. See *State* v. *Dizon*, supra, 28 Conn. App. 448. The defendant's constitutional right to a fair trial has not been violated in this case.

The defendant next argues that the language "a mere hypothesis of innocence will not suffice" was in error. The defendant correctly concedes that our courts repeatedly have upheld language that "a mere *possible* hypothesis of innocence will not suffice." See, e.g., *State* v. *Godfrey*, 39 Conn. App. 1, 6, 663 A.2d 1117 (1995), appeal dismissed, 236 Conn. 904, 670 A.2d 1305 (1996). He claims, however, that the failure to include the word "possible" was confusing and misleading. We disagree.

"Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of inno-

cence. . . . But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word reasonable and the word possible. . . . Proof of guilt must exclude every reasonable supposition of innocence . . . [while a] mere possible hypothesis of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) Id., 5–6.

After reviewing the instructions as a whole, we conclude that the court's failure to include the adjective "possible" when stating that "a mere hypothesis will not suffice," did not mislead the jury. We so conclude in light of the court's clear instruction regarding the distinction between a reasonable doubt and a mere possible hypothesis: "Proof beyond a reasonable doubt is proof which excludes every reasonable hypothesis except guilt. Proof beyond a reasonable doubt is consistent with guilt and is consistent with guilt and is inconsistent with any other reasonable conclusion. You must, however, distinguish between a reasonable hypothesis and a possible hypothesis. Proof of guilt must exclude every reasonable supposition of innocence. A mere hypothesis of innocence will not suffice."

Finally, the defendant points to the instruction: "If you can, in reason, reconcile all of the facts proven with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty. On the other hand, if you find that the proven facts do establish the guilty of the accused beyond a reasonable doubt, then the proper verdict would be guilty." The defendant does not contend that this language in itself diluted the state's burden of proof, as our Supreme Court has upheld similar language in *State* v. *Griffin*, 253 Conn. 195, 210, 749 A.2d 1192 (2000). Rather, he argues that

this language "coupled with the other questionable phrases only further diluted the state's burden." As we have stated, the instructions, taken as a whole, are correct in law, adapted to the issues and sufficient for the guidance of the jury. We therefore conclude that it was not reasonably possible that the jury was misled.

The judgment is affirmed.

In this opinion the other judges concurred.