[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SUPPLEMENTAL MEMORANDUM OF DECISION
After a bench trial, the court issued its memorandum of decision, dated July 11, 2002 (#124) (decision), finding that the defendant, Kimberly's Ltd. (Kimberly's) had not proved its counterclaims against the plaintiff, Ivoryton Store (Ivoryton). Kimberly's then filed its motion to reargue, dated July 17, 2002 (#121) (motion), seeking reconsideration. The motion appeared as a non-arguable matter at short calendar on August 5, 2002. The court issues this supplemental memorandum of decision to address the arguments made by Kimberly's in its motion.
 I. PROCEDURAL BACKGROUND AND FACTS
The court set forth its findings concerning the procedural background and the facts in the decision, at pp. 1-4. Those findings are incorporated by reference, but need not be re-stated here.
 II. STANDARD OF REVIEW
"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citations omitted; internal quotation marks omitted.) Opoku v. Grant,63 Conn. App. 686, 692, 778 A.2d 981 (2001).
Kimberly's argues that the court's decision should be reconsidered because it rests on a misapplication of our Supreme Court's recent decision in Suffield Development Associates Ltd. Partnership v. NationalLoan Investors, L.P., 260 Conn. 766, 778 A.2d 981 (2002) (Suffield), CT Page 11169 which was published after the trial of this matter. Its motion raises other arguments as well, which the court addresses below.
 III. DISCUSSION A. Abuse of Process
Kimberly's asserts that the decision "ignores the instruction ofSuffield that `executions are properly obtained and used only in accordance with a valid judgment and in an appropriate amount,' and focuses almost exclusively on the absence of explicit language in Defendant's counterclaim attributing an improper purpose to Plaintiff." (Motion, p. 4.) Suffield, however, does not hold that the obtaining of monies by a wrongful execution alone amounts to an abuse of process. Kimberly's presentation does not address portions of Suffield, quoted by this court, which are set forth again below for ease of reference, and which state that more must be proved in order to prevail on a claim of abuse of process. For example, the decision, at pp. 6-7, states:
"In Suffield, the plaintiff alleged that the defendants wrongfully applied for the execution to pressure the plaintiff into paying a disputed amount claimed to be due pursuant to a stipulated judgment and "misrepresented their right as a matter of law to, and inflated the amount of, the execution. The plaintiff alleged, therefore, that the defendants used the process of an execution to the plaintiff into paying money to National and to recover monies that the plaintiff did not owe under the stipulated judgment.' [Suffield, supra, 260 Conn. 774.]" (Decision, p. 6.)
"The Supreme Court concluded that the plaintiffs allegations supported a claim for abuse of process "because it alleged that the defendants had misrepresented the amount to which National was entitled as a matter of law under the stipulated judgment, inflated the amount owed, and thereby obtained an excessive execution all for the purpose of coercing the plaintiff into making payment to National.' Id., 775. The court noted also that "[t]he plaintiff alleged that the defendants used the execution to pressure the plaintiff in an extortionate manner and to recover money the amount of which was still in dispute. Obtaining an execution is not a mechanism designed to pressure a party into settlement in other litigation, to determine how much money one party owes another, or to secure money pending the outcome of litigation. To use it for any of those purposes potentially constitutes an abuse of process.' Id., 776. The court reiterated that "an improper purpose' must be alleged. Id. Thus "a specific instance of misconduct' must be accompanied "with an ulterior motive.' Id., 777." (Decision, pp. 6-7.) CT Page 11170
Kimberly's argues that "it is evident that Plaintiff's primary motive was to grab money out of defendant's bank account to which it was not entitled." (Motion, p. 4.) It claims that the "improper purpose is necessarily implied from the Plaintiff's proven conduct. . . ." (Motion, p. 5.)
Whether a claimant has met its burden of proof on an issue of motive or purpose involves a question of fact to be resolved by the finder of fact. See Daley v. Aetna Life Casualty Co., 249 Conn. 766. 784, 734 A.2d 112
(1999). As noted, here the case was tried to the court, which functioned as the finder of fact. Whether or not an inference should be drawn is properly a question for the finder of fact. See Capozzi v. Liberty MutualFire Insurance Co., 229 Conn. 448, 453, 642 A.2d 1 (1994).
"Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the [finder of fact] to decide." State v. Hall 66 Conn. App. 740, 746,786 A.2d 466 (2001).
In the decision, this court found that Ivoryton's actions may have been mistaken and not wilful. See Decision, pp. 8-9. As noted in the decision, Ivoryton alleged in its February 16, 2000 complaint that it was owed the sum of $7,021.09. The evidence showed that, as of January 1, 1998, Kimberly's owed Ivoryton the sum of $8,186.97, based on numerous invoices. (See Exhibit A.) In April 2000, after being served with process in February 2000, and instead of appearing in this action, Kimberly's sent a summary to Ivoryton of what it believed to be the outstanding invoices, for a total of $4,331.84. (See Exhibit D.) Kimberly's did not appear in this action until June 2001, although it had been served more than a year earlier.
When the court (Gordon, J.) entered judgment for Ivoryton and against Kimberly's in September 2000, it found the debt, based on Ivoryton's affidavit of debt, to be reduced in amount, to $3,052.45 (including a $14.00 bad check charge). In its July 2002 decision, at pages 3-4, this court found that, between July 2000 and September 2000, Kimberly's made payments over time. By September 2000, it paid to Ivoryton an additional $4,331.85, including a final check for $866.37, which was credited after the date of the affidavit of debt.
The evidence reflects a relatively informal manner of record-keeping by CT Page 11171 both parties. Under the circumstances, given the lengthy history of the past due balance owed by Kimberly's to Ivoryton, Ivoryton may have miscalculated the amount due and proceeded in error.
As the party seeking relief, it was Kimberly's burden, by a preponderance of the evidence, to prove its claim. The court declined to draw the inference sought by Kimberly's, that Ivoryton proceeded with the improper purpose of taking funds to which it was not entitled. Under these circumstances, the drawing of such an inference is not required. See Cannata v. Dept. of Environmental Protection, 239 Conn. 124, 138
n. 24, 680 A.2d 1329 (1996). Kimberly's did not prove this element of its claim. See decision, pp. 8-9.
Kimberly's erroneously argues, in its motion, at p. 5, that Suffield
"teaches, in effect, that the "primary purpose doctrine' is a defense to an abuse of process claim." No citation to this proposition is provided. After all, Suffield was decided in the context of a motion to strike a complaint, not, as in the case before this court, after presentation of the case on the merits at trial. As noted in the decision, our Supreme Court reiterated that "the gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed." (Emphasis added; internal quotation marks omitted.) Suffleld, supra, 260 Conn. 773. Proof of the primary improper purpose, therefore, is an element of the claimant's cause of action.
Where a party does not sustain its burden of proof, the result may be, unfortunately, lack of redress for an injury. Our Supreme Court recently addressed such a situation in the context of a plaintiffs failure to sustain its burden of proof as to damages. "We recognize that our decision that the plaintiff failed to prove damages means that the defendants, whose malpractice caused the plaintiffs harm, escape virtually unscathed. Injury is the illegal invasion of a legal right; damage is I the loss, hurt, or harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered. . . . In this case, the defendants argued that [the witness's] testimony failed to remove the question of damages from the realm of speculation and, consequently, the plaintiff failed to satisfy its burden of proof on the issue of damages. This is a case in which we reverse the judgment not for lack of "mathematical exactitude' . . . but because the plaintiff failed to provide sufficient evidence. This outcome is a direct result of the plaintiffs choice of evidence." (Citations omitted; footnote omitted; internal quotation marks omitted.) Beverly HillsConcepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 78,717 A.2d 724 (1998). Here, Kimberly's did not sustain its burden of proof CT Page 11172 as to liability.
 B. Default
Kimberly's also contends that the court's decision is in error by "treat[ing] this issue as if it were [Kimberly's] burden to prove primary improper purpose on its counterclaim, even where [Ivoryton] failed to contest the issue. [Kimberly's] counterclaim clearly alleges a claim for abuse of process. See Counterclaim, ¶ 6. [Ivoryton] failed to appear at trial and was non-suited on its complaint against [Kimberly's]. The decision notes that [Ivoryton] "denied the salient allegations of the counterclaim.' There is no record that [Ivoryton] ever challenged the legal sufficiency of the counterclaim or any part thereof. In this posture, [Ivoryton] must be found to have conceded any legal insufficiency. Indeed by failing to appear at trial, [Ivoryton] should be defaulted and found to have conceded liability to [Kimberly's] on the counterclaim. Connecticut Practice Book § 17-19." (Footnote omitted.) Motion, pp. 5-6.
At trial, Ivoryton was nonsuited on its complaint, in response to Kimberly's motion. The court then proceeded to trial on the counterclaim. See Trial Transcript, pp. 4-5. At no time prior to the entry of judgment did Kimberly's move to have a default enter against Ivoryton on the counterclaim. In order to treat Ivoryton as being in default, and thereby as having conceded liability, a default would have had to be entered against the absent party. See Shailer v. Planning Zoning Commission, 26 Conn. App. 17, 32-33, 596 A.2d 1336 (1991). Likewise, it is clear that the trial heard by this court was not a hearing in damages, held after "a technical admission by the defendant of the truth of the facts alleged in the complaint." Ratner v. Willametz,9 Conn. App. 565, 574-575, 520 A.2d 621 (1987). It would not be proper to now default Ivoryton in response to a motion for reargument after judgment has entered. See Opoku v. Grant, supra, 63 Conn. App. 692.
 C. Pleading
The court addresses Kimberly's assertion that the court somehow held it to an improper, stringent standard" of pleading. Motion, p. 6. The court did not decide this case by finding that Kimberly's counterclaim failed to state a legally sufficient cause of action. The court is well aware that it is not adjudicating this case on a motion to strike, pursuant to Practice Book § 10-39. Rather, in its decision, the court simply noted that, here, in contrast to Suffield, improper purpose was neither alleged nor proved. See Decision, p. 7. CT Page 11173
In addition, the court noted that Kimberly's had orally argued that Ivoryton's improper purpose was to achieve a conversion. See Decision, p. 7; Trial Transcript, pp. 19-21. In the decision, the court stated that conversion was not alleged in the counterclaim and cited Treglia v.Zanesky, 67 "Conn. App. 447, 457-458, 788 A.2d 1263 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252 (2002), for the proposition that "a plaintiff may not allege one cause of action and recover upon another. . . ." "It also noted that a court may not render judgment "on the basis of a legal theory that the plaintiff never asserted in the complaint. . . ."Pergament v. Green, 32 Conn. App. 644, 654, 630 A.2d 615, cert. denied,228 Conn. 903, 634 A.2d 296 (1993). See Decision, p. 8.
Contrary to Kimberly's argument in the motion, at pages 6-8, by referencing this case law, the court was not finding the counterclaim insufficient to allege abuse of process. The court's decision does not so find. Rather, the court simply meant that Kimberly's could not change its abuse of process claim into one for conversion, since the legal theory of conversion was not pleaded.[1] The court's decision is premised on its finding that Kimberly's did not prevail on the merits of its abuse of process claim.[2]
Thus, this is not a situation akin to that involving a variance between the pleadings and the proof such as was present in a recent decision cited by Kimberly's (motion, p. 6), Brunswick School Inc. v. Hutter,53 Conn. App. 455, 462-463, 730 A.2d 1206 (1999) (Appellate Court remanded case to trial court for reconsideration of damages where an attorney trial referee recommended judgment based on two years of expenses and interest, when only one year of expenses and interest was sought in the complaint.) There, the plaintiff did not allege one cause of action and recover on another; rather it presented evidence of twice the damages it claimed, which the Appellate Court found to be a material variance warranting remand. See id.
 D. Justice and Equity
Finally, the court addresses Kimberly's last argument, that "even if [Ivoryton's] conduct does not constitute abuse of process," the court should exercise its inherent authority to assure that the judicial process is not misused and that Ivoryton does not retain the funds "obtained through improper means." (Emphasis in original.) Motion, p. 8. As noted, it would be contrary to law for the court to enter judgment for Kimberly's on a claim which Kimberly's has not proved or on one which it has not pleaded and of which Ivoryton was not given notice by Kimberly's. CT Page 11174
"We remain `a government of laws, and not of men,' Marbury v. Madison,5 U.S. (1 Cranch.) 137, 163 [1803], only so long as our laws remain clear." (Internal quotation marks omitted.) Packer v. Board ofEducation, 246 Conn. 89, 100-101, 717 A.2d 117 (1998). In order for the court to enter judgment for Kimberly's it could do so only in response to a claim of which its adversary had notice and an opportunity to respond under applicable rules and law.[3]
 CONCLUSION
After reconsideration, and for the reasons stated herein and in its previous decision, the court reiterates its previous findings. It declines to change its previous ruling. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT