BRUNSWICK SCHOOL, INC. *v.* GERHARD P. HUTTER
(AC 17738)

Spear, Sullivan and Daly, Js.

Argued January 19—officially released May 25, 1999

*Philip M. French*, with whom, on the brief, was *Gerhard P. Hutter*, pro se, for the appellant (defendant).

*W. I. Haslun II*, with whom, on the brief, was *Cristin L. Rothfuss*, for the appellee (plaintiff).

*Opinion*

DALY, J. The defendant, Gerhard P. Hutter, appeals from a default judgment, rendered by the trial court, in favor of the plaintiff, Brunswick School, Inc. The defendant claims that the trial court improperly (1) rendered judgment in accordance with the attorney trial referee's report and (2) awarded interest in violation of public policy, specifically General Statutes § 37-4, and (3) deprived the defendant of his right to "a day in court." We affirm the judgment of the trial court in part and reverse it in part.

The following facts are relevant to the resolution of this appeal. The plaintiff commenced the present action by a two count complaint, dated March 15, 1996, alleging (1) breach of contract and (2) unjust enrichment in connection with the defendant's alleged failure to pay to the plaintiff tuition and related expenses for his three sons who had been students at the plaintiff school during the 1993-94 academic year. The defendant[1] filed an answer dated June 6, 1996, in which he did not deny any of the allegations, but left the plaintiff to its proof.

After the pleadings were closed, the trial court scheduled a settlement conference for September 24, 1996,[2] at which the defendant failed to appear. A trial date was then scheduled for December 11, 1996. The trial court, *Karazin, J.*, granted the defendant's request for a continuance of the December 11, 1996 trial date because of the defendant's alleged poor health and the case was continued to January 24, 1997.[3] The defendant failed to appear for trial on January 24, 1997, and the trial court, *Ryan, J.*, rendered a default against him. Thereafter, an attorney trial referee conducted a hearing in damages. The attorney trial referee filed his report on January 29, 1997, recommending that judgment enter in favor of the plaintiff on its breach of contract claim in the amount of $68,819.66, in addition to interest in the amount of $26.11 per day commencing January 31,

---

[1] The defendant appeared pro se at all times and in all proceedings mentioned.

[2] Prior to the settlement conference, the trial court had sent notice to the parties indicating (1) the date of the conference, (2) that appearance was mandatory under penalty of default or dismissal and an immediate hearing in damages and (3) that a trial date would be selected at the settlement conference.

[3] In granting the defendant's request for a continuance, the trial court notified the parties that (1) the new date was final, (2) no further continuances would be granted and (3) failure to appear would result in an entry of dismissal or default and an immediate hearing in damages.

1997, if the defendant had failed to pay the entire amount of $68,819.66 by that date.[4]

The defendant filed a motion to open the default and a motion objecting to the attorney trial referee's report, dated February 5 and February 8, 1997, respectively. The trial court, *D'Andrea, J.,* denied both motions on June 17, 1997. On August 29, 1997, the trial court, *Lewis, J.,* rendered judgment in accordance with the attorney trial referee's report, and the defendant filed a motion for reconsideration, dated September 16, 1997, which was denied by the court on October 6, 1997. This appeal followed.[5]

I

The defendant first claims that the trial court improperly (1) rendered judgment in accordance with the attorney trial referee's report and (2) denied his motion for reconsideration. We address each of these claims in turn.

A

The defendant contends that after he failed to appear at trial on January 24, 1997, the trial court improperly rendered a default against him. Specifically, the defendant contends that the trial court should not have rendered a default against him because health problems had prevented him from appearing in court. Relying on that same reasoning, he also contends that the trial court improperly denied his motion to open the default and, thus, improperly rendered judgment in accordance with the attorney trial referee's report. We disagree.

---

[4] The report also recommended that judgment enter in favor of the plaintiff on its unjust enrichment claim in the amount of $1.

[5] Subsequent to filing this appeal, the defendant filed a motion for articulation requesting that the trial court articulate and clarify the basis for its rulings and orders. The trial court filed an articulation dated February 20, 1998.

Pursuant to Practice Book § 17-19,[6] a trial court has the authority to render a nonsuit or default against a party that fails to comply with a judicial order to appear either in person or by counsel. Furthermore, "[w]hen a case is regularly assigned for trial, the plaintiff appears with his witnesses, and the defendant fails to appear, no statute or rule of court prevents a trial court from proceeding forthwith to hear the case." *New England Floor Covering Co.* v. *Architectural Interiors, Inc.*, 159 Conn. 352, 356, 269 A.2d 267 (1970).

Additionally, "[t]he decision to grant or deny a motion to open a judgment is within the trial court's discretion and this decision will not be disturbed on appeal unless it was unreasonable and a clear abuse of discretion. [*Altberg* v. *Paul Kovacs Tire Shop, Inc.*, 31 Conn. App. 634, 640, 626 A.2d 804 (1993)]." (Internal quotation marks omitted.) *Charbonneau* v. *Charbonneau*, 51 Conn. App. 311, 313, 721 A.2d 565 (1998), cert. denied, 247 Conn. 964, 724 A.2d 1125 (1999). "In determining whether the trial court abused its discretion, [we] must make every reasonable presumption in favor of its action. *Walton* v. *New Hartford*, 223 Conn. 155, 169, 612 A.2d 1153 (1992)." *Charbonneau* v. *Charbonneau*, supra, 313.

In the present case, we are asked to decide whether the trial court abused its discretion in both rendering a default against the defendant for failing to appear at trial on January 24, 1997, and denying his motion to open the default. At various times throughout the proceedings, several trial courts reviewed the defendant's stated reason of poor health as the basis for his request for a continuance, failure to appear at trial and motion to set aside the default entered against him.

---

[6] Practice Book § 17-19 provides: "If a party fails to comply with an order of a judicial authority or a citation to appear or fails without proper excuse to appear in person or by counsel for trial, the party may be nonsuited or defaulted by the judicial authority."

The trial court, *Karazin, J.*, considered the defendant's alleged poor health as the basis for his request for a continuance and granted the request on December 11, 1996. On January 24, 1997, however, the trial court, *Ryan, J.*, rendered a default against the defendant for failure to appear at trial. Our review of the record reveals that the defendant wrote a letter to the trial court, *Karazin, J.*, which was filed on January 24, 1997, the day of trial, indicating that he was requesting another continuance to "bring his medical condition under control." Significantly, however, the defendant had been diagnosed with hypertension *three weeks prior* to January 24, 1997, the date of trial, but he did not inform the trial court of his continuing ill health until the day of trial.

Finally, on June 17, 1997, the trial court, *D'Andrea, J.*, denied the defendant's request to open the default. Practice Book § 17-42 provides that "[a] motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for *good cause shown* upon such terms as it may impose. . . ." (Emphasis added.) In its February 20, 1998 articulation, the trial court, *Lewis, J.*, noted that the defendant had provided outdated medical documentation in support of his motion to open the default, including a hospital record of admission on October 6, 1996, *three months prior* to the trial, and a letter from a physician indicating that the defendant had hypertension. In articulating its basis for denying the defendant's motion for reconsideration, the trial court found it significant that the defendant did not provide any reference to a more current report from a physician. In making "every reasonable presumption in favor of [the court's] action"; *Walton* v. *New Hartford,* supra, 223 Conn. 169; we conclude that the trial court did not abuse its discretion in rendering the default against the defendant and in denying the defendant's motion to open the default.

B

The defendant next contends that the trial court improperly denied his motion for reconsideration. We agree.[7]

The trial court's February 20, 1998 response to the defendant's motion for articulation stated: "The [attorney trial referee] found as a fact that the defendant's three sons attended the plaintiff, the Brunswick School . . . during the academic years 1992-1993 and 1993-1994, and had incurred expenses for tuition and related expenses totaling $59,288.96. This amount was for three sons over the course of two years. The referee also added interest of $9347.38 from February 1, 1996, to the date of trial at the rate of 16.075 [percent] per year as authorized by the contract between the parties. . . . The referee's recommendation that judgment should enter in favor of the plaintiff for $68,819.66, plus per diem interest of $26.11 . . . followed legally and logically from his factual findings. There was no basis for the [trial] court to 'reconsider' the entry of judgment as requested by the defendant."

Practice Book § 60-5 provides in relevant part that "[this] court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise

---

[7] We note that in denying the defendant's motion for reconsideration, the trial court, *Lewis, J.*, indicated that the motion was denied because the defendant did not file either a motion to correct, exceptions or objections to the attorney trial referee's report. The record, however, indicates that the defendant did, in fact, file an objection to the attorney trial referee's report. It is, thus, unclear whether the trial court actually considered the defendant's objection in denying his motion for reconsideration because the court's response to the defendant's motion for articulation and its order *rendering judgment accordingly conflict on this point. We need not, however,* address this issue further because the defendant's only claim is that the *amount* of damages is improper and we are ordering a reconsideration of the damages.

erroneous in law. . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

In the present case, the attorney trial referee's findings and recommendation that judgment enter for the plaintiff for tuition, related expenses and interest for two years conflicts with the allegations in the plaintiff's complaint, which seek recovery for only one year, 1993-94. The plaintiff seeks to enforce three enrollment agreements between the parties, each of which provides for payment terms regarding tuition and related expenses for each of the defendant's three sons for the 1993-94 academic year. Pursuant to each agreement, charges that remained unpaid after thirty days would "incur a penalty of 1-1/4 percent per month (15 percent annual rate)," not the 16.075 percent annual rate found by the attorney trial referee and recommended in his report.[8]

"A plaintiff's right to recover has traditionally been based on the allegations made in his complaint. A plaintiff may not allege one cause of action and recover upon another. . . . While this principle still remains in force today, courts now follow a more liberal policy in passing on claims of variance between the pleadings and the proof offered. . . . A court will overlook a variance between the pleadings and proof unless that variance is so material as to prejudice the other party in the presentation of its case. Practice Book § 178 [now § 10-62] . . . ." (Citations omitted; internal quotation marks

---

[8] We note that while 1-1/4 percent per month *may* equal an annual percentage rate of 16.075 percent, because the agreements are ambiguous in stating both a monthly and an annual rate, we resolve the ambiguity in favor of the lower rate because the plaintiff drafted the agreements. See *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 329, 714 A.2d 1230 (1998) (general rule that ambiguous provisions construed against drafter).

omitted.) *Web Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 359–60, 525 A.2d 57, following remand, 205 Conn. 479, 533 A.2d 1211 (1987).

Our review of the record reveals that the variance in the amount of damages between those alleged in the complaint and those recommended in the attorney trial referee's report was so material as to prejudice the defendant. We conclude, therefore, that the attorney trial referee's findings of fact and recommendations concerning the amount of damages to be awarded was improper. The trial court thus improperly rendered judgment in accordance with those findings and recommendations. Accordingly, we remand the case to the trial court for reconsideration of the issue of damages.

## II

The defendant next claims that the trial court's award of interest as an element of damages violates public policy[9] and, specifically, General Statutes § 37-4.[10] We disagree.

In making this claim, the defendant contends that § 37-4 and public policy together provide that loans at

[9] We note that the defendant has not briefed the public policy aspect of this claim. The defendant asserts that the plaintiff's claim for interest violates public policy and General Statutes § 37-4 but addresses only the applicability of the statute. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.). *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 586, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). We therefore review this claim only as to whether the interest awarded violates General Statutes § 37-4.

[10] General Statutes § 37-4 provides: "No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 21-44, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."

a rate greater than 12 percent are prohibited, except for those loans made by pawnbrokers as provided for by statute. In relying on that statute, the defendant characterizes the plaintiff's delay in collecting the unpaid account balance as a loan of the tuition money for the period of time that the balance remained unpaid. The defendant's reliance on § 37-4 is misplaced, however, and his characterization of the transaction in this case as a loan is misguided.

In *Stelco Industries, Inc.* v. *Zander*, 3 Conn. App. 306, 487 A.2d 574 (1985), we rejected the defendant's assertions that § 37-4 applied to credit sales transactions. Specifically, the defendant in *Stelco Industries, Inc.*, argued that the terms of a credit agreement that provided for the accrual of finance charges on amounts outstanding over thirty days after their payment due date at an annual percentage rate of 18 percent were subject to § 37-4. Id., 307–308. The defendant in *Stelco Industries, Inc.*, contended that "since the plaintiff is seeking interest in excess of 12 percent per annum on the amount due it on the sales price for goods sold and delivered, which was unpaid for more than thirty days after delivery, the interest . . . is for the forbearance of the debt created by their delivery and acceptance." Id., 308. We noted, however, that the "indebtedness to the plaintiff arose out of credit sales transactions, and *not out of the loan of money* . . . ." Id. (Emphasis added.) Moreover, we adopted the rationale that "[b]oth the judicial and legislative treatment of debts arising from the sale of goods on credit clearly indicate that Connecticut adheres to the . . . [view] that *sales on credit are not equated with loans* and that the prohibition of usurious interest applies only to loans of money. Although Connecticut's legislature has enacted a great amount of legislation to regulate the interest charges made by sellers of goods to consumers, it has not

amended . . . [the] statute prohibiting usurious interest charges on the loan of money. . . . [F]or this court to decide that the prohibition of Connecticut's usury statute should extend to debts arising out of other kinds of transactions than from a loan of money would be presumptuous." (Emphasis added; internal quotation marks omitted.) Id., 309, quoting *Scientific Products* v. *Cyto Medical Laboratory, Inc.*, 457 F. Sup. 1373, 1380 (D. Conn. 1978).

Here, the defendant's indebtedness to the plaintiff arose from the purchase of educational and related services, not from a loan of money. Moreover, the defendant's argument that the plaintiff's delay in collecting the unpaid tuition balance constituted a loan is analogous to the argument advanced by the defendant in *Stelco Industries, Inc.*, that was rejected by this court. Accordingly, we conclude that the interest awarded by the trial court as an element of damages did not violate § 37-4.

### III

The defendant finally claims that by rendering a default against him, the trial court improperly deprived him of his right to a "day in court." We disagree for the reasons set forth in part I A of this opinion and we conclude that the trial court did not deprive the defendant of his day in court.

The judgment is reversed only with respect to damages and the case is remanded for further proceedings to reconsider the amount of damages and to apply the contract rate of interest, 15 percent per annum.

In this opinion the other judges concurred.