******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY MARGARET FARREN *v.* J. MICHAEL FARREN
(AC 37079)
(AC 37080)

Beach, Alvord and Keller, Js.

*Argued September 9—officially released, December 29, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Genuario, J.)

*Ryan C. McKeen*, with whom were *Allison M. McKeen*
and, on the brief, *J. Michael Farren*, self-represented,
for the appellant (defendant) in AC 37079.

*Allison M. McKeen*, with whom was *Ryan C. McKeen*,
for the appellant (defendant) in AC 37080.

*Ernest F. Teitell*, with whom were *Marco A. Allocca*
and, on the brief, *Paul A. Slager*, for the appellee
(plaintiff).

*Opinion*

BEACH, J. For the purposes of General Statutes § 52-212[1] and Practice Book § 17-43,[2] an involuntary commitment, on the surface, would seem to constitute reasonable cause for absence from trial and to warrant the granting of a motion to open a default judgment. The facts of the present case, however, are not ordinary. The issue in the present matter is not whether an involuntary commitment *may* be reasonable cause for a party's absence at trial but whether an involuntary commitment *must* constitute reasonable cause, even where the trial court suspects that the absentee party orchestrated his own involuntary commitment after years of dilatory tactics. We conclude that an involuntary commitment does not necessarily constitute reasonable cause, and the trial court is not required to find reasonable cause from an involuntary commitment standing alone.

This decision concerns two appeals, AC 37079 and AC 37080, arising from the same underlying case, a civil action for money damages. In AC 37079, the defendant, J. Michael Farren, appeals from the trial court's denial of his motion to open the default judgment entered against him, contending that the denial was an abuse of discretion. In AC 37080, the defendant appeals from the default judgment itself. He claims that the trial court's rulings violated various constitutional rights, including the equal protection and due process guarantees of the federal and state constitutions and the sixth amendment of the federal constitution. We do not agree with the defendant's claims in either of his appeals.

The relevant facts and procedural history of these appeals are as follows. On the evening of January 6, 2010, the defendant and the plaintiff, Mary Margaret Farren, both lawyers, were at their home in New Canaan. The defendant and the plaintiff had been married for twelve years and had two young daughters. The plaintiff recently had served a complaint seeking to dissolve the parties' marriage. The parties met in their home to discuss the action, which the plaintiff refused to withdraw, despite the defendant's request that she do so. That night, the defendant physically assaulted the plaintiff with his hands, fists, and a flashlight, and said that he was going to kill her. The plaintiff lost consciousness from repeated blows to her head. When she regained consciousness, the defendant continued to hit her and attempted to strangle her. He also pulled out large amounts of her hair. Ultimately, the plaintiff and the children managed to escape from the defendant and to flee the home. Shortly after these events, and in addition to the marital dissolution action, the plaintiff initiated this civil action against the defendant to compensate her for the injuries that she suffered.[3] The state also filed criminal charges against the defendant.

The civil trial was originally scheduled to begin on

January 10, 2012. Significant delays resulted when the defendant repeatedly moved for continuances, instructed his counsel to withdraw,[4] and moved to transfer the case to another judicial district. On December 2, 2013, the day before voir dire was to begin, the court denied yet another of the defendant's motions for a continuance. The defendant warned that, "I am currently under psychiatric treatment, and I really need to get a session in this week. . . . I really need that time. . . . I may not be able to be here . . . ." The court reassured the defendant that it would try to accommodate his "interests." Jury selection began the following day, on December 3, 2013, and it concluded by the end of the day on December 5, 2013. Evidence was to begin on Monday, December 9, 2013.

At 4:07 p.m., on Sunday, December 8, 2013, the defendant sent an e-mail to the court reading: "I'm in Hartford Hospital for treatment. Under the circumstances, travel to Stamford is impossible. Mike Farren." On the morning of December 9, 2013, a court officer replied to the e-mail, advising the defendant to provide the court with a letter from his treating physician that included the reason for the hospitalization and its anticipated duration. The court briefly recessed to provide the defendant an opportunity to reply to the e-mail. By the conclusion of the recess, however, the defendant had not replied. The plaintiff moved for the entry of a default judgment. The trial court took the motion under advisement and continued the trial until the following morning.

The following morning, the trial court still had not received further communication from the defendant. The court then granted the motion for default, citing several reasons: the case had been continued multiple times while pending for almost four years, the jury had been selected, and the trial court had given the defendant an opportunity to provide medical documentation to avoid the entry of default. In entering the default, the trial court also stated that "the court may wish to vacate . . . the default, and may allow the defendant to participate in the balance of the trial, or it may make other rulings" should the defendant arrive during the hearing in damages stage. The trial then continued as a hearing in damages. See Practice Book §17-33 (a)

On December 11, 2013, during the hearing in damages, the court received a letter on letterhead of the Institute of Living, a division of Hartford Hospital. The letter appeared to be signed by a clinician and read: "Please be advised that John Farren . . . was admitted to the hospital on 12/08/2013. The discharge date has yet to be determined." The trial court had no additional information regarding the defendant's status. The plaintiff continued to present evidence in the case. At the conclusion of the plaintiff's evidence, on December 17, 2013, the jury reached a verdict in the amount of $28.6

million in favor of the plaintiff. The court rendered judgment in accordance with the verdict and extended the time to file posttrial motions until January 31, 2014.

The defendant filed a motion to open the judgment on January 31, 2014. In his motion, the defendant stated that he had been absent because on December 8, 2013—the day before trial—he was involuntarily committed to the Institute of Living for fifteen days pursuant to an emergency certificate. He stated that during this period of commitment, he had not been permitted to communicate with the court. The defendant attached the following documents in support of his motion: (1) a physician's emergency certificate dated December 8, 2013, at 11:15 p.m.; (2) Institute of Living's application for the involuntary commitment of the defendant as a person with psychiatric disabilities; (3) a letter dated December 17, 2013, that was addressed to the Stamford Superior Court—where the defendant's criminal case was pending—that notified the court that the defendant "was admitted to the hospital on 12/08/2013 for treatment of severe depression. We are not prepared to discharge him at this time"; and (4) a decree of the Hartford Probate Court dated December 26, 2013, denying the Institute of Living's application for involuntary commitment. The plaintiff objected to the motion, protesting that the defendant orchestrated his hospitalization and emergency commitment to delay the trial.

At a preliminary hearing on the motion, the court found that the seriousness of the defendant's alleged reason for his unavailability and the plaintiff's objection warranted the court's entry of a scheduling order providing for expedited discovery, the filing of exhibits and lists of witnesses by both parties, and an evidentiary hearing. The defendant responded by filing objections to the discovery of Probate Court records, his medical records, and his medical providers. The court sustained the objections.

At the evidentiary hearing on May 6, 2014, the defendant did not present any witnesses. His evidence consisted only of the four documents that had been attached to his motion to open, the motion itself, and a copy of General Statutes § 17a-500, which relates to commitment under an emergency certificate. The plaintiff did not present any evidence.

When the evidentiary hearing concluded, the court denied the defendant's motion to open the judgment, stating: "The truth is that this court simply does not know whether or not the defendant orchestrated his involuntary commitment . . . in order to delay the trial of his civil action." The court found that the defendant did not meet his burden to show reasonable cause for missing the trial because he did not testify; he did not call his sister to testify, the person who, according to the emergency certificate, had requested his commitment; he did not call any of his doctors to testify; and

he did not allow any discovery of his medical records, the disclosure of the transcript and exhibits from the Probate Court proceeding in which the Probate Court denied the Institute of Living's application for the involuntary commitment of the defendant, or any other medical information.

The defendant appealed from the denial of his motion to open in AC 37079, and he appealed from the entry of the default judgment in AC 37080.

I

AC 37079

In his first appeal, AC 37079, the defendant claims that the court abused its discretion when it denied his motion to open the default judgment. The defendant essentially claims that the court: (1) misunderstood the law governing involuntary commitment in that it failed to conclude that his involuntary commitment to the Institute of Living was reasonable cause for not attending the trial, (2) erred when it ignored the conclusions of medical and psychiatric professionals and instead substituted its own lay observations and, relatedly, did not give proper weight to the evidence of his commitment, (3) did not provide him an opportunity to clarify, to supplement, or to certify the documents accepted by the trial court as evidence, and (4) improperly created a unique and unlawful burden of proof for parties with mental or psychiatric disabilities. We do not agree.

We review the trial court's denial of the defendant's motion to open for an abuse of discretion. "A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Dziedzic* v. *Pine Island Marina, LLC*, 143 Conn. App. 644, 651–52, 72 A.3d 406 (2013), quoting *Walton* v. *New Hartford*, 223 Conn. 155, 169–70, 612 A.2d 1153 (1992).

A trial court's determination of whether to grant a motion to open judgment is informed by § 52-212. To obtain relief under § 52-212, the moving party must make a two part showing that: "(1) a good defense existed at the time an adverse judgment was rendered; and (2) the defense was not at that time raised by reason of mistake, accident or other reasonable cause." (Internal quotation marks omitted.) *Pachaug Marina & Campground Assn., Inc.* v. *Pease*, 149 Conn. App. 489, 493, 89 A.3d 423 (2014); see also Practice Book § 17-43; *Berzins* v. *Berzins*, 105 Conn. App. 648, 651–52, 938

A.2d 1281, cert. denied, 289 Conn. 932, 958 A.2d 156 (2008). The movant has the burden of satisfying each of these two requirements. *Costello* v. *Hartford Institute of Accounting, Inc.*, 193 Conn. 160, 167, 475 A.2d 310 (1984). The failure to satisfy either requirement is fatal to the motion to open. *Dziedzic* v. *Pine Island Marina, LLC*, supra, 143 Conn. App. 652.

In the present matter, the court engaged in this two part inquiry when it considered the defendant's motion. It concluded that the defendant satisfied the first requirement by showing that he had a defense, in part, to the plaintiff's claim of damages.[5] As to the second requirement, the court concluded that the defendant did not meet his burden of showing that he had reasonable cause for his absence from the trial. On the basis of the record before us, we conclude that the court did not abuse its discretion when it rendered its decision denying the defendant's motion to open the judgment. We shall consider the defendant's four claims in turn.

## A

First, the defendant claims that the court misunderstood the law governing involuntary commitment by not finding that an involuntary commitment, standing alone, was reasonable cause for not attending the trial. The defendant refers to General Statutes § 17a-502, which provides in subsection (a) that before a person can be involuntarily committed under an emergency certificate, a physician must conclude that the person has "psychiatric disabilities and is dangerous to himself or others . . . and is in need of immediate care and treatment . . . ." Subsection (b) provides in relevant part that "[a]ny person admitted and detained . . . shall be examined by a physician specializing in psychiatry not later than forty-eight hours after admission." General Statutes § 17a-502 (b). The defendant argues that the fact that he was involuntarily committed pursuant to § 17a-502 was itself reasonable cause for his absence because, by operation of law, he was unable to attend the trial.

Neither the court nor the plaintiff appeared to dispute that the defendant was involuntarily committed at the Institute of Living for the duration of the trial. The court did not find in its memorandum of decision on the defendant's motion to open that such commitment, by itself, was necessarily sufficient to prove that the defendant had reasonable cause for missing the trial. Instead, the court, in its discretion, decided that in light of the defendant's previous attempts to delay the trial, the involuntary commitment could constitute reasonable cause only if it was the result of bona fide mental health or medical issues, whereas "if the defendant intentionally feigned symptoms to cause his involuntary commitment, that would not constitute reasonable cause."

At the evidentiary hearing, the defendant offered

scant evidence of a bona fide mental health emergency. He exercised his right to protect from disclosure evidence—medical records, doctors' names and qualifications, notes from psychiatric sessions—that might have helped to demonstrate that he had suffered a bona fide medical emergency the night before the trial. Although the defendant was within his right to block the disclosure of his medical information, this choice left the court with little probative evidence by which to determine whether a bona fide medical emergency had occurred. None of the documentary evidence that the defendant did offer at the hearing was certified or authenticated. Nevertheless, the court gave the defendant latitude and admitted the defendant's exhibits. The court did not find the evidence illuminating, although it noted that the emergency certificate was the most significant. The court was not persuaded by this document, however, because "the content of the emergency certificate is based almost entirely on the . . . out-of-court statements made by the defendant . . . ."

On appeal, the defendant argues that he did not need to present additional evidence to prove a bona fide medical emergency because he could not have been committed had not the medical staff at the Institute of Living thought he was suicidal and a hazard to himself. The commitment, he argued, should have been viewed as conclusive of reasonable cause. Without additional evidence, however, the trial court had no information about the staff, their qualifications, whether the mandates of § 17a-502 were followed, whether the defendant underwent the obligatory examination forty-eight hours after he was admitted, or whether his doctors based their decision to commit him on anything other than his self-reported statements.

If we were to accept the defendant's argument that his involuntary commitment pursuant to § 17a-502 constituted automatic reasonable cause for failing to attend the trial, the court then would have no discretion to assess the evidence before it. We will not require the court to accept an unauthenticated document that, although presumably issued in accordance with the law, may be based entirely on self-reported statements by the party moving to open the default judgment. Our decision today does not, as the defendant suggests, dissuade people from seeking mental health treatment for fear of having their medical records disclosed and their medical histories revealed at an evidentiary hearing to determine whether they have reasonable cause for missing trial.[6] In the present case, the defendant was given ample opportunity to gather evidence about the Institute of Living's procedures, to solicit testimony from doctors or administrators, and to authenticate his emergency certificate. The defendant did not pursue any of these avenues or any others, and the court was not bound to accept the defendant's unsworn argument that the dictates of § 17a-502 were objectively followed

without manipulative or deceptive conduct by the defendant.[7]

Even where parties have provided evidence regarding medical conditions in support of motions to open, we have recognized trial courts' exercises of discretion. In *Stephen* v. *Hoerle*, 39 Conn. App. 253, 664 A.2d 817, cert. denied, 235 Conn. 928, 667 A.2d 555 (1995), we upheld the trial court's refusal to grant the plaintiff's motion to open the judgment even though the plaintiff claimed that she could not attend a deposition because she suffered from agoraphobia. The court admitted into evidence and considered two psychiatric reports and an affidavit from the plaintiff. Id., 257–58. Despite the reports and a sworn statement from the plaintiff, we did not conclude that the court abused its discretion when it determined that her agoraphobia was not a reasonable cause for her absence from the deposition. Id. In the present case, the court had less evidence before it in support of the defendant's claim that he had suffered a bona fide medical emergency.

The defendant urges us to distinguish *Stephen* on the ground that a refusal to attend a deposition due to agoraphobia is "much different from the inability to attend a proceeding due to physical restraint . . . ." We do not categorically distinguish between various mental illnesses and the limitations they may impose. Agoraphobia perhaps may constitute reasonable cause for missing a court appointment in some circumstances, but the defendant here did not provide a record on which we can practically draw reasonable comparisons or distinctions to the facts in *Stephen*. The court in the present case did not abuse its discretion by not concluding that the documents that were submitted with the motion to open constituted reasonable cause on their face.

B

The defendant next claims that the court abused its discretion by not according proper weight to the emergency certificate, by ignoring the Institute of Living's application to the Probate Court to have the defendant involuntarily committed, and by substituting instead its own observations.

The court had discretion to weigh the evidence before it. "[T]he trial court, as trier of fact, determine[s] who and what to believe and the weight to be accorded the evidence. The sifting and weighing of evidence is peculiarly the function of the trier." (Internal quotation marks omitted.) *Burns* v. *Adler*, 158 Conn. App. 766, 803, 120 A.3d 555, cert. granted on other grounds, 319 Conn. 931,    A.3d    (2015). "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have

reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Morgillo* v. *Empire Paving, Inc.*, 158 Conn. App. 399, 409, 118 A.3d 760 (2015); see also *McCarthy* v. *Ward Leonard Electric Co.*, 104 Conn. App. 535, 542, 935 A.2d 189 (2007) (upholding trial court's denial of motion to open when it decided that "given the history of this matter and [the party's] course of dealing in this matter, the court does not find her affidavit credible" [internal quotation marks omitted]).

The court acted within its discretion when it weighed the emergency certificate, which contained little of significance apart from the documents that relied on the defendant's self-reported statements, against the following considerations: (1) the defendant e-mailed the court that he would not attend the trial seven hours *before* the issuance of the emergency certificate and his involuntary commitment; (2) the findings in the emergency certificate were based on self-reported statements; (3) the defendant "consistently and aggressively" tried to postpone the trial prior to his involuntary commitment; (4) the trial court's observations of the defendant in the week preceding the trial did not indicate that he was anything other than "articulate, composed, and in control of himself"; and (5) the Probate Court did not find that the defendant had a psychiatric disability warranting involuntary commitment. On these grounds, the court concluded that it "simply does not know whether or not the defendant orchestrated his involuntary commitment on Sunday, December, 8, in order to delay the trial of his civil action." Given its thoughtful findings on the matter, we do not conclude that the court abused its discretion by affording the emergency certificate limited weight.[8]

The defendant also asserts that the court did not give proper consideration to the Institute of Living's application to the Probate Court seeking to have the defendant involuntarily committed. This document is saddled with many of the same evidentiary deficiencies as the emergency certificate: the defendant did not provide a foundation for the unauthenticated document, the plaintiff did not have the opportunity to cross-examine the physician who completed the application, and the application appears to be based upon the self-reporting of the defendant. This document does suggest that the Institute of Living was unwilling to release the defendant on December 19, 2013, but it is not dispositive as to whether the defendant suffered a bona fide mental health emergency on December 8, 2013; this application is further evidence that the defendant was actually committed—a fact not in dispute. Thus, the court did not abuse its discretion by not considering the Institute of Living's application as dispositive of the critical mental health or psychiatric disability issue.

The defendant's related argument that the court substituted its own observations of the defendant for the medical opinions of trained professionals is unfounded and not supported by the record. After it noted that the defendant had appeared competent during voir dire, the court specifically stated: "Of course the court itself has no special expertise in evaluating persons that may have mental health issues. The court recites its own observations of the defendant in evaluating the defendant's out-of-court statements contained in the defendant's exhibits." Because the court was free to weigh the evidence before it, it was proper for the court to rely on its own observations of the defendant for the limited purpose described.

C

The defendant next claims that the court erred by not providing the defendant "with an opportunity to clarify, supplement or, if necessary, certify the documents that were accepted by the trial court as evidence, even though requiring the certification of the hospital and Probate Court documents . . . is itself an unreasonable burden of proof under [Practice Book] § 17-43." This claim fails on two bases. First, the court did not require that the defendant certify the hospital and Probate Court documents. On the contrary, the court showed great leniency in allowing these documents into evidence without certification or the establishment of a proper foundation. Second, the defendant had ample opportunity to provide the court with the evidence it deemed necessary to grant the motion to open, and he also had knowledge of the specific evidence that the trial court wanted.

Additional facts inform the resolution of this claim. At the conclusion of the hearing in damages, on December 17, 2013, the court rendered judgment and extended the time to file motions to January 31, 2014. On the last day of this extension, January 31, 2014, the defendant filed his motion to open the judgment. The court held a preliminary hearing on the motion on March 5, 2014. At that hearing, the court clearly articulated what it considered to be the factual issue at stake: "The defendant assert[ed] that . . . he was in a suicidal state the day before the evidence in this trial was to be taken and that consistent with that state, he was involuntarily committed and had no ability to leave the Hartford Hospital." Meanwhile, the plaintiff adopted the position that "what occurred [on] December 8 was part of a scheme to delay the trial and was, in part, effectively orchestrated by the defendant to delay the trial." The defendant, then, knew precisely what the burdens and issues would be at the evidentiary hearing.

At the preliminary hearing, the court ordered the defendant to produce the following: "a list of witnesses and exhibits he intends to call or introduce at the evi-

dentiary hearing . . . a signed authorization allowing the plaintiff's counsel to obtain a complete copy of the transcript of the December 26 Probate Court hearing and exhibits or documents used during that hearing, a signed authorization of all records concerning the defendant's treatment at the Institute of Living from June 1, 2013, to the present time, a full list of mental health care providers that the defendant sought treatment from between June 1, 2013, to the present time, and a signed authorization for the release of medical records for any such provider." Perhaps anticipating that the defendant might assert a privilege or object to these requests, the court also warned that "the defendant cannot have it both ways. The defendant cannot assert a privilege and then introduce partial testimony that could lead to an incomplete picture of his treatment that would [be] unfair . . . ." The evidentiary hearing did not occur until May 6, 2014—over two months from the date of this preliminary hearing.

We disagree with the defendant's argument that he did not have an opportunity adequately to prepare or to clarify his evidence for the hearing; rather, he had more than two months in which to do so. The defendant had been on notice for two months that he would be expected to provide evidence to support his assertion that he was in a suicidal state on December 8, 2013. He was also thoroughly informed of the plaintiff's counterarguments and the court's intention to ascertain whether he suffered a bona fide mental health emergency. Additionally, the defendant knew that his ability to show reasonable cause would be compromised if he refused to disclose the requested information regarding his medical history. The court did not abuse its discretion by not giving the defendant additional time to prepare for the evidentiary hearing.

### D

Finally, the defendant claims that the court improperly created a unique and unlawful burden of proof applicable to parties with mental or psychiatric disabilities who move to open judgments. He posits that it is "unlikely" that a trial court would require a party who was defaulted as a result of a cardiac emergency to subpoena his cardiologist and to disclose his medical records to prove a bona fide emergency, and, as such, the court in the present matter required the defendant to prove that he suffered a bonafide emergency only because his illness was psychiatric in nature. We are not persuaded by this comparison. In other cases, we have affirmed the denial of motions to open based on physical illnesses and emergencies. See *Searles* v. *Schulman*, 58 Conn. App. 373, 753 A.2d 420, cert. denied, 254 Conn. 930, 761 A.2d 755 (2000); *Brunswick School, Inc.* v. *Hutter*, 53 Conn. App. 455, 730 A.2d 1206 (1999). It appears that the defendant is not urging us to impose an equal burden, but is in fact asking us to create a

relaxed standard for parties who have psychiatric disabilities, a standard that deems treatment of or commitment for mental illness as per se reasonable cause. We need not create a new, separate standard for parties relying on psychiatric disabilities, and, consequently, we reject the defendant's proposal to create a different standard and his claim that the trial court imposed a unique burden on him because of his mental illness.

We previously have affirmed trial courts' decisions to deny motions to open when the moving party has claimed reasonable cause for absence because of medical issues. For example, in *Brunswick School, Inc.* v. *Hutter*, supra, 53 Conn. App. 455, we upheld the trial court's denial of a motion to open despite the defendant's claim that an ongoing medical condition prevented him from appearing to defend the action. In that case, on the day of the trial, the defendant filed a letter in which he requested another continuance because he needed time to address his hypertension. Id., 460. "Significantly, however, the defendant had been diagnosed with hypertension three weeks prior to . . . the date of trial, but he did not inform the trial court of his continuing ill health until the day of trial." (Emphasis omitted.) Id. In support of his motion, "the defendant had provided outdated medical documentation . . . including a hospital record of admission . . . three months prior to the trial, and a letter from a physician indicating that the defendant had hypertension." (Emphasis omitted.) Id. We held that the trial court did not abuse its discretion by basing its decision to deny the motion, in part, on the defendant's failure to produce current evidence of his illness. Id.; accord *Jaquith* v. *Revson*, 159 Conn. 427, 432, 270 A.2d 559 (1970) (upholding court's refusal to grant motion to open because defendant did not set forth facts showing that her "history of illness and cause for seclusion" was reasonable cause for not complying with court order).

The defendant's reliance on *Brunswick School, Inc.*, undermines his contention that the court imposed a unique burden on him because he suffered from a psychiatric disability rather than a physical ailment.[9] We held in *Brunswick School, Inc.*, that the defendant's failure to provide a "current report" was a proper basis for the court's refusal to grant his motion to open. *Brunswick School, Inc.* v. *Hutter*, supra, 53 Conn. App. 460. In the present case, the defendant did not offer into evidence any report from any physician—outdated or otherwise—and effectively blocked the plaintiff and the court from obtaining any information pertaining to the commitment at all. If a medical report, albeit an outdated one, may provide insufficient reasonable cause, then the court in the present matter ought not be held to have abused its discretion by failing to be persuaded by an unauthenticated emergency certificate and application for involuntary commitment to the Probate Court.

In *Searles* v. *Schulman*, supra, 58 Conn. App. 373, we held that a trial court did not abuse its discretion when it denied a motion to open after the movant claimed that a medical issue constituted reasonable cause for not attending a scheduled trial management conference. There, the plaintiff, who had delayed the trial in the past by filing voluminous pretrial motions, argued in her motion to open that she had missed the conference because she had had out-of-state medical appointments. Id., 377. She did not present any evidence in support of her contention that she actually had appointments, nor did she offer any reasoning as to why these appointments could not be rescheduled. Id. The court's decision to deny the motion to open was not an abuse of discretion, because the plaintiff did not substantiate her claims with evidence. Id.

Likewise, in the present matter, the defendant, who had attempted to postpone the trial "consistently and aggressively," moved to open the judgment but did not provide persuasive evidence as to his mental state on December 8, 2013. The court did not abuse its discretion by refusing unquestioningly to accept unsubstantiated claims of a medical emergency. The refusal was neither based on insensitivity to the defendant's mental health nor grounded in bias against mental illness; as *Searles* demonstrates, trial courts previously have had the discretion to find that nonpsychiatric, medical issues do not comprise reasonable cause for the purposes of § 52-212 if the issues receive insufficient evidentiary support.

The burden imposed upon the defendant in the present case is not dissimilar to or at odds with previous burdens imposed by trial courts when parties have been unable to attend trial due to medical emergencies, and thus the defendant's claim that the trial court's decision was biased and rooted in stigma against mental illness is plainly without merit. If we were to adopt the defendant's reasoning, we would compel trial courts to relinquish their discretion and find that commitment or any paperwork pertaining to a psychiatric disability constitutes per se reasonable cause under § 52-212. After considering the defendant's four claims in AC 37079 and making "every reasonable presumption in favor of [the court's] action"; *Walton* v. *New Hartford*, supra, 223 Conn. 169; we conclude that the trial court did not abuse its discretion in denying the defendant's motion to open the default judgment, and we affirm that judgment of the court.

II

AC 37080

In his second appeal, AC 37080, the defendant claims that the trial court: (1) violated provisions of the federal and state constitutions by entering a default judgment and proceeding with a hearing in damages when the court knew that the self-represented defendant was

involuntarily committed pursuant to § 17a-502, (2) violated the equal protection and due process clauses of the federal and state constitutions as well as the sixth amendment to the federal constitution by denying the defendant reasonable access to his funds and preventing his expert from conducting an independent medical examination of the plaintiff, and (3) either violated the equal protection and due process clauses of the federal and state constitutions and the sixth amendment to the federal constitution or abused its discretion when it denied the defendant's request to continue the trial until after his criminal trial had concluded. We do not agree.[10]

### A

The defendant first claims that the court violated various constitutional rights by entering a default and proceeding with a hearing in damages despite knowing that the self-represented defendant was involuntarily committed. This argument is based on the faulty premise that when the court entered the default, it actually knew that the defendant was involuntarily committed and that the commitment was based on a bona fide medical reason. The record does not contain any evidence that the trial court had knowledge that the defendant was involuntarily committed, that he was restrained at the Institute of Living against his will, or that he was unable to communicate with the court during the trial. At the time the default was entered on December 10, 2013, the only information that the court had as to the defendant's location was his e-mail correspondence from December 8, 2013, in which he stated that he was being treated at Hartford Hospital and that "[u]nder the circumstances, travel to Stamford is impossible."

Relatedly, the defendant asserts that the court violated his constitutional rights when it did not declare a mistrial upon learning of his involuntary commitment. Although the court did receive correspondence from the Institute of Living *after* the default was entered and was discouraged from further communication with the defendant, the court was never specifically informed that the defendant had been involuntarily committed until after the trial. Thus, because of the faulty underlying factual premise, we reject the defendant's first constitutional claim without further analysis.

### B

The defendant's second constitutional claim is that the court violated his equal protection, due process, and sixth amendment rights to prepare his defense when he was not permitted to access his funds to hire counsel, and when the court prevented his expert from conducting an independent medical examination of the plaintiff. At various points in his civil, criminal, and family cases, the defendant was represented by counsel. He filed

several motions for order of payments to cover attorney's and expert fees, and each motion was subsequently denied. Such denials, the defendant argues, left him "no choice but to proceed pro se," in contravention of his constitutional rights.

The record does not support the defendant's claims. On September 26, 2012, the defendant's lawyer in the present case moved to withdraw as counsel. The court denied the motion on November 2, 2012, listing several concerns: the motion was made "on the eve of trial," the court doubted the defendant's ability to address discovery and court orders to be prepared for the trial, the lawyer's claim of financial hardship did not warrant the lawyer's withdrawal, and the defendant was subject to court monitoring and was restricted in the amount of contact that he could have with the plaintiff as a result of court orders in his criminal case, effectively preventing him from deposing the plaintiff. Despite the court's refusal to let counsel withdraw, the defendant filed an appearance in lieu of counsel on April 10, 2013. The plaintiff objected to the appearance, but the court overruled the objection after ensuring that the defendant understood the ramifications of filing an appearance in lieu of counsel. Indeed, the defendant referred to his choice to represent himself as "my right." The court did not deny the defendant access to counsel or deprive him of representation; in fact, the court attempted to dissuade the defendant from forgoing "the guidance and advice of a seasoned trial attorney."

The record also does not support the defendant's argument that his expert was wrongfully prevented from conducting an independent medical examination of the plaintiff.[11] We do not address this issue, however, because we affirmed in part I of this opinion the judgment denying the motion to open the default judgment, and a holding beneficial to the defendant on this issue would offer no practical relief.

### C

Finally, the defendant claims that the court violated his equal protection, due process, and sixth amendment rights when it denied his request to continue the civil trial. The defendant sought a continuance of his civil trial until after his criminal trial, because he worried that he would be forced to "choose between defending himself at the civil trial, in which case he risked incriminating himself at the criminal trial, or invoking his fifth amendment rights at the civil trial, in which case he risked the jury drawing a negative inference."

Typically, we analyze the denial of a continuance in terms of whether the trial court has abused its discretion. *Tyler* v. *Shenkman-Tyler*, supra, 115 Conn. App. 525. If the denial of a continuance has interfered with a constitutional right, however, we apply a due process analysis. Id. It is well established that it is not an auto-

matic constitutional violation to deny a request for a continuance of a civil trial pending the outcome of a criminal trial. See id., 527. The defendant claims that the denial of the continuance forced him "to balance the unenviable choice between presenting a defense and self-incrimination." As in *Tyler*,[12] we hold that the court did not abuse its discretion. Even if there was a constitutional violation, however, any violation was harmless because the defendant did not attend his trial; hence, the failure of the court to grant a continuance did not force the defendant to choose between his constitutional rights and presenting a defense in the present civil action. We therefore reject the defendant's claim that the court abused its discretion by not granting his request for a continuance. Accordingly, we affirm the default judgment rendered in favor of the plaintiff.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-212 authorizes the trial court to open a default judgment upon "written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment . . . and that the . . . defendant was prevented by mistake, accident or other reasonable cause from . . . making the defense."

[2] Practice Book § 17-43 (a) provides in relevant part: "Any judgment rendered . . . upon a default . . . may be set aside . . . upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a . . . defense in whole or in part existed at the time of the rendition of such judgment . . . and that [the movant] was prevented by mistake, accident, or other reasonable cause from . . . appearing to make the same."

[3] In her complaint, the plaintiff alleged that she sustained personal injuries and losses including: "a fracture of the maxillary sinus; a fracture of the jaw; severe facial abrasions, contusions and lacerations, paresthesia and neurasthenia; lacerations of the scalp from her forehead to the back of her skull; poor control suggestive for a vestibular pattern, nystagmus with vision denied in several positions, vestibular abnormality, vestibular weakness, and defect of the vestibular ocular reflex, some or all of which suggest an uncompensated vestibular deficit; contusions to her neck, back, arms and body; scarring . . . emotional trauma, distress and anxiety, including her fear of imminent death by being killed."

[4] At various points throughout this case, the defendant has been self-represented. The defendant, although a lawyer, claims not to have had previous litigation experience.

[5] In her appellate brief, the plaintiff argues that the court erred when it found that a good defense existed at the time of the judgment, which satisfied the first requirement. We need not consider this argument. Because the defendant must meet both requirements of the two part test, and we affirm the court's conclusion that he did not meet the reasonable cause prong of the test, resolution of whether the good defense prong was satisfied would have no practical effect.

[6] The defendant perhaps could have applied for a protective order to shield from the public sensitive medical information that he did not want released.

[7] The defendant argues that it is implausible to imagine that he could in effect fool a team of doctors into committing him, because he had no background in psychiatry. He also contends that the evidence "demonstrates that [he] did not actually *want* to be committed." (Emphasis in original.) If the defendant had testified under oath, such factual protestations could have been considered by the court, but, as the record stands, the court was not obligated to give them any weight, nor was it bound to accept them as support for the argument that the mere fact of one's involuntary commitment constitutes automatic reasonable cause.

[8] Both the defendant and the plaintiff referred to *Milliun* v. *New Milford Hospital*, 310 Conn. 711, 733–34, 80 A.3d 887 (2013), to support their respective positions. *Milliun* addressed the circumstances in which the statements in medical records may be admitted as expert evidence of causation in a

medical malpractice action, which differs from the issue in the present case. *Milliun* is not controlling in this matter because here the court was dealing with the weight to accord documents, not their admissibility.

[9] The defendant suggests that distinctions between the present appeals and *Brunswick* support his position in two respects. First, the defendant in *Brunswick* did not inform the court until the day of trial that he was ill, whereas here the defendant alerted the court one week prior to the evidence portion of the trial that he would like time to receive psychiatric care, but there was no indication that there would be interference with the trial schedule. Second, the defendant in *Brunswick* provided outdated documentation of his condition, but the defendant here provided a more current, although entirely conclusory, document about his involuntary commitment. We are not persuaded that these distinctions make a difference in the outcome of the present case.

[10] When a party's constitutional rights are at stake, we employ a plenary standard of review. "When an act is shown by reliable facts to affect a specific constitutional right . . . the analysis should turn on whether a due process violation exists rather than whether there has been an abuse of discretion." (Internal quotation marks omitted.) *Tyler* v. *Shenkman-Tyler*, 115 Conn. App. 521, 525, 973 A.2d 163, cert. denied, 293 Conn. 920, 979 A.2d 493 (2009) (quoting *In re Shaquanna M.*, 61 Conn. App. 592, 604, 767 A.2d 155 (2001)). Whether a party has been deprived of "due process rights is a question of law, to which [this Court must] grant plenary review." *Matthew W.* v. *Dept. of Children and Families*, 143 Conn. App. 813, 821, 71 A.3d 603 (2013).

[11] The defendant alleges that the court was "losing patience" with him and thus "imposed a number of conditions on the examination," including that the examination take no more than one day. The examination never took place, however, because the defendant's expert said that the examination could not be completed in the time allotted. The court did not prevent the expert witness from conducting his examination, but, rather, it imposed reasonable limitations on the scope of the examination.

[12] "The matter of continuance is traditionally within the discretion of the trial judge . . . . In [federal case law, Superior Court decisions, and cases from other jurisdictions], the courts held that when there are parallel civil and criminal proceedings, the courts have discretion to stay discovery in a civil proceeding or to stay the action in its entirety if required by the interests of justice." (Citation omitted; internal quotation marks omitted.) *Tyler* v. *Shenkman-Tyler*, supra, 115 Conn. App. 528 (holding that court did not abuse its discretion by refusing to continue divorce proceeding until conclusion of defendant's criminal proceeding—even if defendant had to assert privilege against self-incrimination during divorce proceeding, thereby potentially affecting division of marital property).