## NANCY P. TYLER *v.* RICHARD J. SHENKMAN-TYLER
## (AC 30812)

Harper, Alvord and Mihalakos, Js.

Argued April 24—officially released July 7, 2009

*William F. Gallagher*, with whom, on the brief, was *Hugh F. Keefe*, for the appellant (defendant).

*Norman A. Pattis*, with whom, on the brief, was *Nancy P. Tyler*, pro se, for the appellee (plaintiff).

*Opinion*

ALVORD, J. This appeal arises from the judgment of the trial court dissolving the parties' marriage. The defendant, Richard J. Shenkman-Tyler, claims that the court improperly denied his motions to continue the dissolution trial until after the disposition of a pending criminal case charging him with intentionally setting fire to property owned by the plaintiff, Nancy P. Tyler. He argues that the court's denials deprived him of the opportunity to present a defense in the dissolution action, thereby depriving him of his constitutional due process rights, because he invoked his fifth amendment privilege against self-incrimination. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The parties were married on September 13, 1993, in Cheshire. The plaintiff's daughter and son from a previous marriage were

adopted by the defendant in 1998.[1] During the marriage, the parties purchased a summer cottage in Niantic. Most of the deposit funds came from the plaintiff's bank account, and she held title to the property solely in her name. The defendant owned a house in South Windsor, where he had resided prior to the marriage, and the family resided in South Windsor and used the Niantic property as a vacation home.

The parties' relationship deteriorated, and the plaintiff and the children left the marital home in South Windsor on January 23, 2006. In April, 2006, the parties attempted to reconcile, but the plaintiff decided shortly thereafter that she wanted to pursue the separation. On July 19, 2006, the plaintiff filed her complaint to dissolve the marriage. At that time, she also filed a restraining order to remove the defendant from the Niantic property, which was granted by the court. The ensuing litigation was protracted and contentious.

On January 9, 2007, the court, *Solomon, J.*, entered orders pursuant to an agreement between the parties that allowed the defendant access to and use of the Niantic property the weekend of March 2, 2007. On the morning of Monday, March 5, 2007, the East Lyme police and fire departments were called to the property due to a structural fire. The defendant and his two dogs were rescued from the roof of the first floor porch. The house and its contents were totally destroyed. On May 10, 2007, after an investigation, the defendant was arrested and charged with arson in the first degree and reckless endangerment in the first degree.

On July 5, 2007, the defendant filed a motion to continue the dissolution trial that had been scheduled for July 19, 2007, until after the disposition of his criminal case. The plaintiff filed an objection to that motion,

---

[1] The daughter was twenty-two years old and the son was eighteen years old at the time of the judgment of dissolution.

and the court held a hearing on July 11, 2007. At the conclusion of the parties' arguments, the court, *Solomon, J.*, granted only a three month continuance "to allow [the defendant] and his defense team, both in the domestic matter and in the criminal matter, to develop a strategy on how they want to deal with the [fifth amendment] privilege issue." The trial date was rescheduled to November 7, 2007. On September 21, 2007, the defendant filed another motion to continue the dissolution trial until the resolution of the pending criminal action, claiming that the continuance was necessary to protect his federal and state constitutional privileges against self-incrimination or his federal and state constitutional rights to due process. The court, *Simon, J.*, denied the motion on September 27, 2007.

A trial was held on March 18, 19, 20 and 24, 2008. The plaintiff, along with several witnesses, testified on her behalf, and she submitted numerous exhibits. The defendant elected to exercise his fifth amendment privilege against self-incrimination and did not testify at the trial. No witnesses testified on his behalf, and he submitted one exhibit. He did, however, cross-examine the plaintiff's witnesses. The court issued its memorandum of decision on July 2, 2008, in which it dissolved the parties' marriage and entered orders dividing the marital assets. This appeal followed.[2]

The issue raised in the defendant's appeal is whether the defendant, who invoked his fifth amendment privilege against self-incrimination and declined to testify

---

[2] In his appellate brief, the defendant states that on appeal, he is challenging the orders denying his motions to continue the dissolution trial indefinitely and the judgment that was rendered on July 2, 2008. The court's ruling on the first motion is contained in the transcript of the hearing held July 11, 2007, and the court sets forth the reasons for its decision. The court's ruling on the second motion filed September 21, 2007, consists of the notation "denied," the handwritten date of September 27, 2007, and the signature of the judge on the defendant's motion in the court file. It appears that the second motion was decided on the papers.

at his dissolution trial, was denied his constitutional due process rights by the court's denials of his motions to continue the civil proceeding until after the completion of the criminal proceeding. The defendant argues that those rulings prevented him from presenting a defense at the dissolution trial and that his property rights were taken away without the opportunity for him to be heard at a meaningful time and in a meaningful manner.[3]

Ordinarily, a reviewing court analyzes a denial of a motion for a continuance in terms of whether the trial court abused its discretion. If, however, the refusal to grant a continuance interferes with a specific constitutional right, the analysis will involve whether there has been a denial of due process. *In re Shaquanna M.,* 61 Conn. App. 592, 601–602, 767 A.2d 155 (2001). The constitutional right alleged to have been violated must be shown, not merely alleged. Id., 603. "A denial of constitutional due process, when shown by the particular facts, does not involve discretion because due process is an absolute right guaranteed by the constitution and allows the court no choice. . . . [W]hen an act is shown by reliable facts to affect a specific constitutional right . . . the analysis should turn on whether a due process violation exists rather than whether there has been an abuse of discretion." (Internal quotation marks omitted.) Id., 604.

In the present case, there is no question that the defendant had the right to assert his fundamental constitutional right against self-incrimination. See *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 146–47,

[3] "It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose property rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Bartley* v. *Bartley,* 27 Conn. App. 195, 197, 604 A.2d 1343 (1992).

470 A.2d 246 (1984); *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 6, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008). The fifth amendment privilege against self-incrimination not only protects an individual from being called involuntarily as a witness against himself in a criminal proceeding, but also affords him the right to refuse to answer questions in a civil proceeding where the answers might incriminate him in a future criminal proceeding. See *Olin Corp.* v. *Castells*, 180 Conn. 49, 53, 428 A.2d 319 (1980). Here, the defendant exercised his privilege and was not compelled to testify. His fifth amendment privilege is intact and has not been waived in connection with his future criminal proceeding.[4]

With respect to the constitutional right not to be deprived of property without due process of law, the defendant fails to recognize that it was *his decision* not to testify at his dissolution trial. The court did not compel him to exercise his fifth amendment privilege, and the court did not compel him to forgo presenting a defense. Although he may have been faced with difficult choices under those circumstances, he was not deprived of a constitutional right. That conclusion is supported by this court's recent decision in *State* v. *Easton*, 111 Conn. App. 538, 959 A.2d 1085, cert. denied, 290 Conn. 916, 965 A.2d 555 (2009).

In *Easton*, the defendant argued that his constitutional right to due process was violated when he was forced to make an election between his sixth amendment right to present a defense in his violation of probation hearing and his fifth amendment right to refrain from compulsory self-incrimination in his other pending criminal matters. We concluded that he had not been deprived of his due process rights. "So long as the

---

[4] As of the time of oral argument, the criminal case against the defendant was still pending.

defendant is neither forced to exercise nor prevented from exercising his right to testify, the right to present a defense is not burdened by the strategic choice or resulting adverse consequences." Id., 541. Under such circumstances, the fact that a defendant has to make a difficult choice between two constitutional rights does not deprive him of due process. Id., 543. "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." (Internal quotation marks omitted.) *State* v. *Ayuso*, 105 Conn. App. 305, 310 n.2, 937 A.2d 1211, cert. denied, 286 Conn. 911, 944 A.2d 983 (2008).

We note that the defendant has cited no case or authority that recognizes an absolute constitutional right to a continuance under either amendment when a party has made the decision to remain silent in a civil proceeding to preserve his right against self-incrimination in a collateral criminal proceeding. In fact, case law is to the contrary. "[T]he Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." (Internal quotation marks omitted.) *Kashi* v. *Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986), quoting *Securities & Exchange Commission* v. *Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir.), cert. denied, 449 U.S. 993, 101 S. Ct. 529, 66 L. Ed. 2d 289 (1980); see *Baxter* v. *Palmigiano*, 425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976).

Having concluded that the court's denial of the defendant's motions to continue indefinitely the dissolution trial did not deprive him of a specific constitutional right, we now review the court's denials using the abuse of discretion standard. See *Bove* v. *Bove*, 93 Conn. App. 76, 87, 888 A.2d 123, cert. denied, 277 Conn. 919, 895 A.2d 788 (2006); *In re Shaquanna M.*, supra, 61 Conn. App. 601–602. The issue is whether the court so abused

its discretion in refusing to grant the motions for continuance that it deprived the defendant of due process. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in each case, particularly in the reasons presented to the trial judge at the time the request is denied." (Internal quotation marks omitted.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 827, 949 A.2d 557 (2008).

Although no appellate decisions of this state have addressed the factors to be considered in determining whether to grant a continuance in a civil proceeding when a collateral criminal proceeding is pending, we have examined federal case law, Superior Court decisions and cases from other jurisdictions that we have found to be instructive. In all of these cases, the courts held that when there are parallel civil and criminal proceedings, the courts have discretion to stay discovery in a civil proceeding or to stay the action in its entirety if required by the interests of justice. See *Keating* v. *Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.), cert. denied, 516 U.S. 827, 116 S. Ct. 94, 133 L. Ed. 2d 49 (1995); *Kashi* v. *Gratsos*, supra, 790 F.2d 1057; *Bridgeport Harbour Place I, LLC* v. *Ganim*, 269 F. Sup. 2d 6, 8 (D. Conn. 2002); *Trustees of the Plumbers & Pipefitters National Pension Fund* v. *Transworld Mechanical, Inc.*, 886 F. Sup. 1134, 1138 (S.D.N.Y. 1995); *Wilcox* v. *Webster Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. CV-07-5010093-S (January 11, 2008) (44 Conn. L. Rptr. 786); *Doe* v. *Lenarz*, Superior Court, judicial district of Hartford, Docket No. CV-05-4012970-S (July 5, 2006) (41 Conn. L. Rptr. 586);

*State* v. *Tomasso*, 49 Conn. Sup. 327, 334–35, 878 A.2d 413 (2004); *Farricielli* v. *Dept. of Environmental Protection,* Superior Court, judicial district of Hartford at New Britain, Docket No. CV-96-5386369 (January 8, 1997); *People in the Interest of D.A.J.*, 757 N.W.2d 70, 71–72 (S.D. 2008). The propriety of a stay is determined on a case-by-case analysis.

The factors that have been weighed by the various courts in making such a determination are basically the same. The parties in this case referred the trial court to *Bridgeport Harbour Place I, LLC,* for guidance, both in their briefs and at the July 11, 2007 hearing on the motion for a continuance. "In determining whether to impose a stay . . . the court must balance the interests of the litigants, nonparties, the public and the court itself. . . . The factors a court should consider include: [1] the interests of the plaintiff in an expeditious resolution and the prejudice to the plaintiff in not proceeding; [2] the interests of and burdens on the defendants; [3] the convenience to the court in the management of its docket and in the efficient use of judicial resources; [4] the interests of other persons not parties to the civil litigation; and [5] the interests of the public in the pending civil and criminal actions." (Citation omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim,* supra, 269 F. Sup. 2d 8.

In the present case, the court set forth the factors it considered when it issued its ruling granting "a one time continuance" for three months for the defendant to develop a strategy to accommodate his interests in the civil and criminal proceedings. It first noted that it had read the memoranda of law submitted by the parties and had reviewed the cited case law in reaching its determination. It then listed the considerations it had taken into account, which included the age of the case, the belief that matrimonial cases generally should be resolved within one year because of the harm caused

to the litigants and children if left to linger, the fact that the delay sought was unknown due to the nature of criminal proceedings, the defendant's "great hostility" and "total lack of cooperation with [the] court," the court's perception that the defendant "has no interest in moving the case along," the difficulty the two children were having in "watching their parents' lives fall apart" and the fact that the arson charge was but one issue in a nonjury dissolution proceeding.[5]

Although *Bridgeport Harbour Place I, LLC,* is not binding authority, the stated factors in that case can be helpful to a court in deciding whether to stay a civil proceeding pending the outcome of a related criminal proceeding. We conclude that in this case, the court considered appropriate factors in balancing the interests of the parties, the court and those affected by the litigation in reaching the conclusions that it did, which were amply supported by the record. At the time the court denied the defendant's motion to have the matter continued until the outcome of the criminal proceeding,[6] the dissolution proceeding had been pending for almost one year, and no date had been set for the criminal trial. The record gives no indication as to how

---

[5] A preliminary question must be the extent to which the issues in the criminal case would overlap with those in the civil case, because self-incrimination is more likely if there is a significant overlap. *Trustees of the Plumbers & Pipefitters National Pension Fund* v. *Transworld Mechanical, Inc.,* supra, 886 F. Sup. 1139. Here, in the defendant's criminal case, the issue is whether he intentionally set fire to the plaintiff's property. The dissolution proceeding involves the distribution of the parties' marital assets, one of which would be the subject property in Niantic. Although there is some limited overlap, they are not parallel proceedings. Furthermore, the defendant's blanket refusal to testify at the dissolution trial did not automatically result in his forfeiting the outcome of the civil proceeding.

[6] We are referring to the defendant's motion filed July 5, 2007, which was heard on July 11, 2007. We do not provide a separate analysis for the court's denial of the defendant's motion filed September 21, 2007, because there is no court transcript or ruling provided by the defendant to review. It was the defendant's burden to provide this court with an adequate record for our review. See *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.,* 48 Conn. App. 605, 607, 710 A.2d 190 (1998); Practice Book § 61-10.

quickly the criminal trial might have taken place thereafter and, in fact, the criminal proceeding is still pending. Under the circumstances of this case, the court properly could have concluded that it would be unreasonable to postpone a dissolution trial for such an excessive period of time. Accordingly, we cannot conclude that the court abused its discretion in denying the indefinite continuances as requested by the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.