******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

UNITED PUBLIC SERVICE EMPLOYEES UNION,
COPS LOCAL 062 *v.* TOWN OF
HAMDEN ET AL.
(AC 43739)

Prescott, Moll and Suarez, Js.

*Syllabus*

The plaintiff union sought to enjoin the defendants from proceeding with
a disciplinary hearing against E, a police officer represented by the
plaintiff and employed by the defendant town, until the completion of
a pending criminal prosecution against E. Following a hearing, the trial
court rendered judgment granting the plaintiff's application for a tempo-
rary injunction. The named defendant appealed to this court, claiming
that the court used an incorrect legal standard in granting the plaintiff's
application. *Held* that the trial court improperly reviewed the plaintiff's
application for a temporary injunction pursuant to the standard for
adjudicating a motion for a stay of civil proceedings; moreover, unlike
the decisions erroneously relied on by the court, *Lee* v. *Harlow, Adams &
Friedman, P.C.* (116 Conn. App. 289) and *Tyler* v. *Shenkman-Tyler* (115
Conn. App. 521), which involved motions to stay proceedings before
the court, this case involved the court attempting to enjoin a separate
proceeding conducted by another government entity, thus, the court
erred in applying a balancing of the equities test; furthermore, pursuant
to *Nosik* v. *Singe* (40 F.3d 592), the proper standard to apply in a
case involving a request to enjoin ongoing administrative disciplinary
proceedings is the standard for adjudicating a temporary injunction,
and, as the court made no findings as to whether the plaintiff would
suffer irreparable harm in the absence of injunctive relief, the case was
remanded for the court to apply the correct standard and to make the
requisite findings.

Argued April 5—officially released December 7, 2021

*Procedural History*

Action, inter alia, seeking to enjoin the defendants
from proceeding with a disciplinary hearing of a police
officer, brought to the Superior Court in the judicial
district of New Haven, where the court, *Hon. Jon C.
Blue*, judge trial referee, granted the plaintiff's applica-
tion for a temporary injunction, and the named defen-
dant appealed to this court. *Reversed*; *further proceed-
ings*.

*Glenn A. Duhl*, with whom were *Adam J. Lyke*, and,
on the brief, *Jason R. Stanevich* and *Maura A. Mas-
trony*, for the appellant (named defendant).

*John M. Walsh, Jr.*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. The defendant town of Hamden[1] appeals from the decision of the trial court granting the application for a temporary injunction filed by the plaintiff, United Public Service Employees Union, Cops Local 062. Specifically, the defendant was enjoined from proceeding with a disciplinary hearing concerning Devin Eaton, a police officer in its employ, until a pending criminal prosecution of Eaton is concluded. On appeal, the defendant claims that the court utilized the incorrect legal standard in determining whether to grant the plaintiff's application for a temporary injunction.[2] We agree, and, accordingly, we reverse the decision of the trial court and remand the case for further proceedings in accordance with this opinion.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. Eaton is a member of the plaintiff union. On April 16, 2019, Eaton, while on duty, was involved in an incident in which he discharged his service weapon at unarmed civilians, injuring one civilian (April 16, 2019 incident). Another police officer at the scene was also injured as a result of Eaton having discharged his service weapon. On April 26, 2019, the Hamden Police Department Ethics and Integrity Unit, directed by Acting Chief of Police John Cappiello, initiated an internal affairs investigation into Eaton's conduct during the April 16, 2019 incident. New Haven State's Attorney Patrick J. Griffin also authored a report concerning the April 16, 2019 incident and Eaton's use of deadly force. The report, dated October 17, 2019, concluded that, "[u]nder circumstances evincing an extreme indifference to human life, [Eaton] recklessly engaged in conduct which created a risk of death, and thereby caused serious physical injury to [a civilian]." Following Attorney Griffin's recommendation, on October 21, 2019, Eaton was arrested and charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63, all of which were related to the April 16, 2019 incident. Eaton's criminal case is currently pending in the New Haven Superior Court.

On November 15, 2019, Acting Chief Cappiello brought formal disciplinary charges against Eaton. The matter was referred to the Hamden Board of Police Commissioners (board) for adjudication with a recommendation for termination. On November 21, 2019, the board notified Eaton, through his legal counsel, that a hearing would be held on December 6, 2019, to determine what discipline, if any, would be taken against him as a result of the April 16, 2019 incident. Notice and an opportunity for a hearing were provided in accordance with the requirements of the collective bargaining agreement that governs the relationship between the plaintiff and the defendant.[3]

On December 2, 2019, the plaintiff filed a complaint and an application seeking temporary injunctive relief to prevent the board from proceeding with the disciplinary hearing for Eaton while his criminal prosecution remains pending. See *State* v. *Eaton*, Superior Court, judicial district of New Haven, Docket No. CR-19-0224774-T. In support of its application for a temporary injunction, the plaintiff asserted that Eaton has a constitutional property interest in his continued employment with the defendant. The plaintiff argued that Eaton cannot be deprived of this interest without due process of law pursuant to the fourteenth amendment to the United States constitution. Further, the plaintiff asserted that Eaton also has a constitutional right against self-incrimination pursuant to the fifth amendment to the United States constitution. The plaintiff ultimately argued that if the defendant were allowed to proceed with the disciplinary hearing scheduled for December 6, 2019, while the criminal case against Eaton was pending, Eaton would be "compelled to make a choice between his fourteenth amendment right to due process and his fifth amendment right against self-incrimination." The plaintiff further argued that such a choice would cause Eaton to suffer "substantial and irreparable harm" because he would be deprived of the rights guaranteed to him under the United States constitution.

On December 13, 2019, a hearing was held on the plaintiff's application for a temporary injunction. During the hearing, the court specifically acknowledged the difference between the standards for adjudicating an application for a temporary injunction and a motion for a stay of civil proceedings. The court explained that, in determining whether to grant injunctive relief, the court's focus would be on the issue of irreparable harm. In determining whether to grant a stay of proceedings, however, the court's focus would be on the competing interests of the parties. The court asserted that the case law relevant to the present case "does not talk about irreparable harm . . . ." The court distinguished the present case from a civil case in which one party seeks to enjoin another party from "open[ing] [a] rendering plant or . . . build[ing] [a] [b]all field . . . ." The court further asserted that, "unlike the usual case of an order for [a] temporary injunction," because the present case contemplates the staying of an administrative proceeding while a criminal proceeding is pending, the court's analysis must focus on the competing interests of the parties.

In its oral decision, the court explained that it was required "to balance some ponderable weights on each side." The court weighed the interests of both parties as well as the interest of the public. The court cited *Securities & Exchange Commission* v. *Dresser Industries, Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir.), cert.

denied, 449 U.S. 993, 101 S. Ct. 529, 66 L. Ed. 2d 289 (1980), asserting that the strongest case for deferring civil proceedings until after the completion of criminal proceedings is when a party that has been indicted for a criminal offense is required to defend a civil or administrative action involving the same matter.

The court identified that the officer had two interests in the present matter—"a property interest in his continued employment . . . and . . . an interest in exercising or not exercising his fifth amendment right . . . ." The court also stated that the defendant and the public had several interests in the present matter. First, the defendant had an interest in "getting this officer off the street," which had already been accomplished at the time of the hearing. Second, the defendant had an interest in not paying Eaton. The court acknowledged that Eaton was on unpaid leave, and, although the defendant continued to pay $1100 per month for Eaton's insurance, the court asserted that this cost was "relatively de minimis in the more global context of this action." Third, both the defendant and the public had an interest in the quick resolution of the case given the legitimate public concern about Eaton's conduct. The court suggested that this interest would be more significant, however, if Eaton were still working as a police officer and ultimately determined that the public's demands for an immediate resolution did not outweigh Eaton's substantial legal interests. The court also noted that the fact that Eaton had been arrested for assault and other criminal charges created a considerable deterrent effect for other officers. Although the immediate firing of Eaton "would doubtless have an additional deterrent effect," according to the court, "the marginal utility of that would be relatively small . . . ."

After setting forth the foregoing reasoning, the court concluded that Eaton's interests in obtaining a stay outweighed the defendant's interests in obtaining a quick resolution of the case.

At the conclusion of the hearing, the court granted the plaintiff's application for a temporary injunction, announcing its decision orally.[4] This appeal followed.[5] Additional facts will be set forth as necessary.

On appeal, the defendant raises a claim of legal error. Specifically, it claims that the court incorrectly adjudicated the plaintiff's application for a temporary injunction pursuant to the standard for deciding whether to issue a stay of civil proceedings instead of the standard for issuing a temporary injunction. We agree.

We begin by setting forth the standard of review that governs the defendant's claim. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omit-

ted.) *Barber* v. *Barber*, 193 Conn. App. 190, 196, 219 A.3d 378 (2019). "[O]ur analysis of whether the court applied the correct legal standard is a question of law subject to plenary review." *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 598, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

We also set forth the legal principles relevant to this claim. "The standard for granting a temporary injunction is well settled. In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law. . . . A party seeking injunctive relief must demonstrate that: (1) it has no adequate remedy at law; (2) it will suffer irreparable harm without an injunction; (3) it will likely prevail on the merits; and (4) the balance of equities tips in its favor. . . . The plaintiff seeking injunctive relief bears the burden of proving facts which will establish irreparable harm as a result of that violation. . . . Moreover, [t]he extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." (Citations omitted; internal quotation marks omitted.) *Aqleh* v. *Cadlerock Joint Venture II, L.P.*, 299 Conn. 84, 97–98, 10 A.3d 498 (2010). Further, "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. The allegations and proof are conditions precedent to the granting of an injunction. . . . These elements are so crucial that a party's failure to allege and prove them is sufficient ground for sustaining the refusal to grant an injunction, even where a court's conclusions on the merits are erroneous." (Citations omitted.) *Hartford* v. *American Arbitration Assn.*, 174 Conn. 472, 476–77, 391 A.2d 137 (1978).

A distinct standard applies to the court's evaluation of a motion seeking a stay of civil proceedings. To adjudicate a motion for a stay of civil proceedings, courts must apply a balancing of the equities test. See *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 459–60, 493 A.2d 229 (1985). In describing this test, our Supreme Court has stated that "[i]t is not possible to reduce all of the considerations involved in stay orders to a rigid formula . . . ." Id., 458. The court, however, did note that "[a]mong the 'equities' to be placed on the scales . . . are the general equitable considerations which are involved in the issuance of a temporary injunction to preserve the status quo pendente lite." Id., 460.

This court has elaborated on the standard for evaluat-

ing a motion seeking a stay of civil proceedings. "In determining whether to impose a stay . . . the court must balance the interests of the litigants, nonparties, the public and the court itself. . . . The factors a court should consider include: [1] the interests of the plaintiff in an expeditious resolution and the prejudice to the plaintiff in not proceeding; [2] the interests of and burdens on the defendants; [3] the convenience to the court in the management of its docket and in the efficient use of judicial resources; [4] the interests of other persons not parties to the civil litigation; and [5] the interests of the public in the pending civil and criminal actions." (Internal quotation marks omitted.) *Tyler* v. *Shenkman-Tyler*, 115 Conn. App. 521, 529, 973 A.2d 163, cert. denied, 293 Conn. 920, 979 A.2d 493 (2009). "In the absence of a statutory mandate, the granting of an application or a motion for a stay of an action or proceeding is addressed to the discretion of the trial court . . . . [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." (Citation omitted; internal quotation marks omitted.) *Lee* v. *Harlow, Adams & Friedman, P.C.*, 116 Conn. App. 289, 311–12, 975 A.2d 715 (2009).

We begin our analysis of the claim by clarifying what standard the court applied. During the hearing, the court stated that the temporary injunction standard applies in situations that differ from the present matter, such as when one party seeks to prevent another party from "open[ing] [a] rendering plant or . . . build[ing] [a] [b]all field . . . ." The court further asserted that, because the present case contemplates the staying of an administrative proceeding while a criminal proceeding is pending, the court's analysis must focus on the competing interests of the parties. According to the court, unlike the typical application for a temporary injunction, the real question in the present case is "what are the competing interests of the respective players in proceeding right away as distinct from some time down the road." The court's decision, insofar as it distinguishes the present case from cases in which the court believed that the standard for a temporary injunction *does* apply, demonstrates that the court declined to apply the standard for a temporary injunction in the present case.

In addition to making this distinction, the court, during the hearing and in its decision, repeatedly referred to weighing the interests of the parties, which reflects that it utilized the standard for adjudicating a motion for a stay of civil proceedings, as set forth previously. At the beginning of the hearing, the court stated that "the question before [the court], it seems pretty clear,

rest[s] on . . . a weighing of the competing interest[s] involved . . . the interest in fact of those respective tribunals and of course of . . . Eaton himself . . . ." Throughout the hearing, the court continued to make reference to and inquire about the "competing interests" of the parties. Additionally, as the court announced its decision, it stated that "this is a case where the court has to balance some ponderable weights on each side." The court then went on to identify, in its decision, the competing interests of the parties and ultimately determined that the interests of Eaton outweighed the interests of the defendant. This analysis mirrors the balancing of the equities test adopted in *Griffin Hospital*, which applies to the evaluation of a motion seeking a stay of civil proceedings rather than an application for a temporary injunction. See *Griffin Hospital* v. *Commission on Hospitals & Health Care*, supra, 196 Conn. 459–60.

Further establishing that the court did not apply the standard for a temporary injunction is the fact that the court made no finding as to irreparable harm, a finding that is integral in the adjudication of an application for a temporary injunction. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. The allegations and proof are conditions precedent to the granting of an injunction." *Hartford* v. *American Arbitration Assn.*, supra, 174 Conn. 476. Nevertheless, the court stated that the "case law on this particular issue does not talk about irreparable harm . . . ." Counsel for the defendant specifically reminded the court that it was required to make a finding of irreparable harm, noting that the cases cited by the court "had to do with a stay of proceedings and . . . the weight of the discovery. It's different in this case. This is an injunction case, not a stay of civil proceedings, so I think irreparable harm absolutely is a factor that has to be reviewed . . . ." Despite these contentions, the court did not make a finding as to irreparable harm. Because the court did not make a finding as to irreparable harm, proof of which is a "[condition] precedent to the granting of an injunction"; *Hartford* v. *American Arbitration Assn.*, supra, 476; it did not apply the standard for adjudicating an application for a temporary injunction.

We conclude that the court undertook an incorrect legal analysis. The standard for a motion to stay proceedings does not apply in the present case because the court attempted to enjoin a separate proceeding conducted by another governmental entity, rather than staying a proceeding before it. In reaching its decision, the court erroneously relied on *Lee* v. *Harlow, Adams & Friedman, P.C.*, supra, 116 Conn. App. 289, which is distinguishable from the present case. The court, quoting from *Lee*, asserted that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket

with economy of time and effort for itself, for counsel, and [for] litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." See *Lee* v. *Harlow, Adams & Friedman, P.C.*, supra, 312. The stay of proceedings at issue in *Lee*, however, involved the court's staying of proceedings in a legal malpractice action pending on *its own docket*. Id., 309. In that case, the plaintiff brought a legal malpractice action against a law firm arising out of the firm's representation of the plaintiff in several foreclosure actions. Id., 290–91. Both the foreclosure actions and the malpractice action were pending before the court. Id., 294. In rendering its decision, this court held that the court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ." (Internal quotation marks omitted.) Id., 311.

In the present case, the court also cited *Tyler* v. *Shenkman-Tyler*, supra, 115 Conn. App. 528–29. In *Tyler*, the plaintiff and the defendant were parties to a marital dissolution action. Id., 523. Before the dissolution trial began, there was a structural fire at a vacation property owned by the parties, and, after an investigation, the defendant was arrested and charged with arson related to the fire. Id. The defendant then filed a motion to stay the marital dissolution trial that was pending before the court until after the disposition of his criminal case. Id. The court asserted that, in order to determine whether to grant a stay, it must "balance the interests of the litigants, nonparties, the public and the court itself." (Internal quotation marks omitted.) Id., 529. One factor to be considered was "the convenience to the court in the management of its docket . . . ." (Internal quotation marks omitted.) Id.

Both *Lee* and *Tyler* are inapplicable to the present case because they involve motions to stay proceedings pending before the court. See *Lee* v. *Harlow, Adams & Friedman, P.C.*, supra, 116 Conn. App. 311–12; *Tyler* v. *Shenkman-Tyler*, supra, 115 Conn. App. 528–29. As we have stated, the requested "stay" in the present case did not involve an action pending on the court's docket but a disciplinary hearing pending before the board, an independent administrative agency. The court's reliance on *Lee* and *Tyler*, therefore, was misplaced.

We further find instructive a decision of the United States Court of Appeals for the Second Circuit, which utilized the standard for granting a temporary injunction under an analogous set of facts.[6] See *Nosik* v. *Singe*, 40 F.3d 592, 595 (2d Cir. 1994). In *Nosik*, the plaintiff, a school psychologist who worked for the Danbury Board of Education, was arrested for allegedly defrauding car insurance companies by submitting false repair bills. Id., 594. Subsequently, the Danbury School Administration (administration) suspected that the

plaintiff had fraudulently obtained employee health insurance benefits for her boyfriend by claiming that he was her husband. Id. When the plaintiff refused to submit proof of her marriage, the administration suspended her and initiated an investigation into both of the suspected fraudulent acts. Id. Following the investigation, the administration recommended that the board of education terminate the plaintiff for moral misconduct. Id. The board of education commenced termination proceedings against the plaintiff. Id. The plaintiff then requested that the board of education stay the proceedings until the criminal proceedings against her concerning the car insurance fraud were resolved. Id. When the board of education declined to do so, the plaintiff brought an action in the United States District Court for the District of Connecticut seeking the issuance of a preliminary injunction in the form of a stay of the termination proceedings, arguing that "the hearings would give prosecutors a preview of her criminal defense," and that "if she invoked her right against self-incrimination during the hearings, she would be fired." Id. The District Court evaluated the request for a stay of the termination proceedings under the standard applicable to an application for temporary injunctive relief,[7] and the District Court denied the plaintiff the relief sought. Id., 594–95. On appeal, the Second Circuit upheld the District Court's ruling because the plaintiff had failed to demonstrate irreparable harm or that she was likely to prevail on the merits of her claim. Id., 595.

The plaintiff in the present case, just as in *Nosik*, filed an application for a temporary injunction seeking to enjoin the defendant from continuing with the disciplinary proceedings against Eaton until the criminal proceedings are resolved. Both *Nosik* and the present case involve requests to enjoin ongoing administrative disciplinary proceedings—matters that were not pending on the court's own docket—premised entirely on the existence of parallel criminal proceedings pending in court. According to the Second Circuit, the proper standard to apply in such a case is the standard for adjudicating a temporary injunction. See id.

For the foregoing reasons, we conclude that the court improperly reviewed the plaintiff's application for a temporary injunction pursuant to the standard for adjudicating a motion for a stay of civil proceedings. The court should have applied the familiar standard that governs an application for a temporary injunction. Application of the proper standard involves factual determinations that must be made by the trial court, such as whether the plaintiff will suffer irreparable harm in the absence of injunctive relief. The court made no such finding in the present case. Thus, the proper remedy is to reverse the judgment and remand the case to the trial court for further proceedings in which the court applies the correct standard and makes the requisite findings.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] We refer in this opinion to the town of Hamden as the defendant. The Hamden Board of Police Commissioners (board) was also a defendant in this case, but it did not appeal. "Although Connecticut recognizes the general rule that a nonappealing party is bound by the decision of the lower court, we also have recognized that there are times when a nonappealing party can benefit from an appellate court's determination even though that party did not participate in the appeal. . . . [W]hen the rights of all the parties are interwoven or when the erroneous legal decision of the lower court forms the basis for all of the parties' rights, the nonappealing party is entitled to the benefit of the appellate court determination." (Internal quotation marks omitted.) *Mierzejewski* v. *Brownell*, 152 Conn. App. 69, 83 n.5, 97 A.3d 61 (2014). This exception to the general rule is applicable in the present case.

[2] The defendant also claims in this appeal that, even if the standard that the court applied was legally proper, the court improperly found that Eaton's interests in his continued employment and protecting his right against self-incrimination outweighed the defendant's interest in resolving the disciplinary proceeding. Because we conclude that the court utilized the incorrect standard in granting the injunction, it is unnecessary for us to reach the merits of this claim.

[3] The plaintiff and the defendant are parties to a collective bargaining agreement governing their relationship during the term of July 1, 2014 through June 30, 2022. Pursuant to article 46, § 46.1 of the agreement, "[n]o employee shall be discharged, demoted or disciplined in any matter except for just cause." Article 46, § 46.3 (A) provides: "If any disciplinary action is to be taken as a result of said complaint, the Police Commission shall notify the employee allegedly involved, in writing, of the charges, and said Commission shall schedule a hearing no later than thirty (30) calendar days after said notification and not earlier than one (1) week after said notification of hearing."

[4] Subsequently, the court filed a signed transcript of its decision in accordance with Practice Book § 64-1 (a).

[5] We conclude in this opinion that the court's ruling constituted the granting of temporary injunctive relief. We briefly note that, although a temporary injunction is not normally considered a final judgment for purposes of an appeal; *Rustici* v. *Malloy*, 60 Conn. App. 47, 52, 758 A.2d 424, cert. denied, 254 Conn. 952, 762 A.2d 903 (2000); this appeal is jurisdictionally proper. "General Statutes § 31-118 . . . authorizes any party aggrieved by a decision of the court on an application for a temporary injunction in a labor dispute to appeal from the final judgment thereon. . . . [S]uch an appeal lies if, but only if, the injunction was granted in a case involving or growing out of a labor dispute." (Citation omitted; internal quotation marks omitted.) Id. General Statutes § 31-112 (c) defines " 'labor dispute' " to include "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment or concerning employment relations, or any controversy arising out of the respective interest of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

[6] Although decisions of the Second Circuit are not binding on this court; *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000); "[f]ederal case law, particularly decisions of the United States Court of Appeals for the Second Circuit . . . can be persuasive in the absence of state appellate authority . . . ." (Citation omitted.) *Duart* v. *Dept. of Correction*, 116 Conn. App. 758, 765, 977 A.2d 670 (2009), aff'd, 303 Conn. 479, 34 A.3d 343 (2012).

[7] The standard used to evaluate an application for a preliminary injunction in federal court is similar to the standard used to evaluate an application for a temporary injunction in our state courts. Under the federal preliminary injunction standard, the plaintiff "bears the burden of showing that she will suffer irreparable harm without [the injunction]. . . . She must also demonstrate either (1) that she will likely prevail on the merits or (2) that sufficiently serious questions go to the merits and the balance of hardships weighs decidedly in her favor." (Citation omitted.) *Nosik* v. *Singe*, supra, 40 F.3d 595.